**1745 WAZEE LLC, Plaintiff–Appellant,**

v.

**CASTLE BUILDERS INC.,**
**Defendant–Appellee.**

**Nos. 01CA2560, 02CA0303.**

Colorado Court of Appeals,
Div. I.

July 17, 2003.

As Modified on Denial of Rehearing
Dec. 18, 2003.

Certiorari Denied May 17, 2004.

Edward O. Byrne & Associates, P.C., Edward O. Byrne, Denver, Colorado, for Plaintiff–Appellant.

Senter Goldfarb & Rice, L.L.C., John D. Hayes, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

In this consolidated appeal, plaintiff, 1745 Wazee LLC (Wazee), appeals the trial court's orders denying its motion to vacate an arbitration award in favor of defendant, Castle Builders Inc. We affirm.

This dispute arises out of a fire in a loft project in lower downtown Denver. The trial court found the following facts were undisputed. Wazee entered into a contract with Castle for the construction of a building. Castle subcontracted with DRD & Associates to install a boiler in the building. After the boiler was installed, a fire damaged the building. Wazee alleged the cause of the fire was the negligent installation of the boiler.

Pursuant to the contract, Wazee filed a request for arbitration, seeking damages against Castle for loss of use as a result of the fire. Wazee did not seek damages for its cost of repair. DRD was also joined as a respondent in the arbitration based on the contract between it and Castle. In the arbitration proceeding, Castle filed a motion for summary judgment, which was joined by DRD.

Wazee objected to the motion for summary judgment on the basis that the Colorado Rules of Civil Procedure should not be followed in arbitration proceedings. However, Wazee also filed a response to the motion for summary judgment.

The arbitrator granted the motion for summary judgment and ruled that the exculpatory clause of the contract between Wazee and Castle applied to Wazee's claim for loss of use damages. Finding the exculpatory clause valid, the arbitrator dismissed Wazee's claims. Under the exculpatory clause in the contract between Wazee and Castle, Wazee waived all rights of action against Castle for loss of use, including all consequential damages resulting from fire. Although Castle refers to this same clause as the "subrogation waiver clause," we will refer to it as the exculpatory clause for ease of reference.

Wazee filed a complaint in the trial court seeking to vacate the arbitration award on the basis, as pertinent to this appeal, that the award violated the public policy of the State of Colorado. The trial court treated the complaint in part as a motion to vacate under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (2003), and denied Wazee's request to vacate the arbitration award. This appeal followed.

At the outset, we note that Wazee initially filed its notice of appeal including DRD as a party. However, Wazee later moved to dismiss DRD as a party, and that motion was granted.

I. Governing Law

First, we reject Castle's argument that the Colorado Uniform Arbitration Act (CUAA), § 13–22–201, et seq., C.R.S.2002, governs our analysis. *See Minto v. Lambert*, 870 P.2d 572 (Colo.App.1993).

The parties may agree in certain circumstances that an arbitration dispute will be governed by a state arbitration law rather than the FAA. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), the agreement at issue contained an arbitration provision and a choice of law provision. The choice of law provision specified that the contract shall be governed by New York law. There, New York law allowed courts, but not arbitrators, to award punitive damages. The agreement provided that arbitration should be conducted in accordance with the rules of the National Association of Securities Dealers or the boards of directors of the New York Stock Exchange and the American Stock Exchange. However, the agreement did not contain an express reference to claims for punitive damages. The Supreme Court stated:

We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitra-

tion clause covers arbitration; neither sentence intrudes upon the other. *Mastrobuono v. Shearson Lehman Hutton, Inc., supra,* 514 U.S. at 63–64, 115 S.Ct. at 1219.

The FAA applies where there is an arbitration provision in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (2003). This statutory mandate has been interpreted broadly to apply to all contracts to which the congressional power under the Interstate Commerce Clause might apply. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Under the FAA, the definition of commerce includes "commerce among the several States or with foreign nations." 9 U.S.C. § 1 (2003). "For the FAA to apply, a court must conclude that a contract containing an arbitration clause evidences a transaction involving commerce. This is not a rigorous inquiry. The contract need have only the slightest nexus with interstate commerce." *Grohn v. Sisters of Charity Health Servs. Colo.,* 960 P.2d 722, 725 (Colo.App.1998).

Here, the arbitration clause did not specify whether the FAA or CUAA applies. However, the contract contained a governing law clause that provided, "The [c]ontract shall be governed by the law of the place where the contract is located." Nevertheless, the complaint alleged that the action was brought under the FAA. As in *Mastrobuono,* we conclude the choice of law clause between Wazee and Castle relates only to the substantive law in Colorado. *See Mastrobuono v. Shearson Lehman Hutton, Inc., supra; see also* J. Criswell, *The "Mandatory" Arbitration of Employees' Statutory Claims,* 30 Colo. Law. 71 (Nov.2001)(a general choice of law clause in an agreement designating a particular state's laws as those to govern the entire agreement will not be treated as an election by the parties to have their agreement governed by state law rather than the FAA). Because Castle did not dispute that the contract involved interstate commerce in the trial court, and the contract at issue evidences a transaction involving interstate commerce, we conclude the FAA applies with respect to arbitration proce-

dures. *See Grohn v. Sisters of Charity Health Servs. Colo., supra.* Accordingly, we address Wazee's public policy argument.

Castle relies on *Byerly v. Kirkpatrick Pettis Smith Polian, Inc.,* 996 P.2d 771, 775 (Colo.App.2000), in support of its argument that the CUAA governs this case. There, a division of this court held that, although the FAA was applicable, it would not consider the applicability of federal cases holding that an arbitration award could be vacated if it was predicated on manifest disregard of the law. However, *Byerly* did not consider the applicability of the public policy exception under the FAA. Thus, *Byerly* is distinguishable. Further, to the extent *Byerly* conflicts with our analysis, we decline to follow it.

## II. Public Policy

Wazee contends the trial court erred in denying its motion to vacate the arbitration award because the public policy of Colorado bars Castle from relying on the exculpatory clause in Castle's contract with Wazee. We disagree.

Although the trial court appears to have applied both the FAA and the CUAA in denying Wazee's motion to vacate the arbitration award, it addressed Wazee's public policy argument, and so do we.

We review a trial court's factual findings on a motion to vacate an arbitration award for clear error and its legal conclusions de novo. *Denver & Rio Grande W. R.R. v. Union Pac. R.R.,* 119 F.3d 847, 849 (10th Cir.1997).

A trial court may vacate an arbitration award under the FAA only for the reasons enumerated in § 10 of that act or a "handful of judicially created reasons," such as violations of public policy, manifest disregard of the law, and denial of a fair hearing. *Sheldon v. Vermonty,* 269 F.3d 1202, 1206 (10th Cir.2001).

The violation of public policy exception is at issue in this appeal. To be overturned on the ground that it violates public policy, an arbitration award must create an "explicit conflict with other 'laws and legal precedents,' keeping in mind the admonition

that an arbitration award is not to be lightly overturned." *Seymour v. Blue Cross/Blue Shield,* 988 F.2d 1020, 1024 (10th Cir.1993)(quoting *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 43, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987) (citations omitted)). The public policy exception is narrow and must satisfy the principles articulated by Supreme Court precedent. *E. Associated Coal Corp. v. United Mine Workers,* 531 U.S. 57, 63, 121 S.Ct. 462, 467, 148 L.Ed.2d 354 (2000).

Thus, to determine whether the exculpatory clause at issue here violates public policy, we must first determine whether the clause conflicts with other laws and legal precedents. Wazee does not contend that the exculpatory clause conflicts with any statutory provision. Rather, it maintains that the exculpatory clause is invalid under *Jones v. Dressel,* 623 P.2d 370 (Colo.1981). We are not persuaded.

Under *Jones,* courts consider four factors to determine whether an exculpatory clause violates public policy: "(1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language." *Jones v. Dressel, supra,* 623 P.2d at 376.

◼ The exculpatory clause in the contract between Wazee and Castle provided:

> Loss of Use Insurance. [Wazee], at [Wazee's] option, may purchase and maintain such insurance as will insure [Wazee] against loss of use of [Wazee's] property due to fire or other hazards, however caused. *[Wazee] waives all rights of action against the contractor for loss of use of [Wazee's] property, including consequential losses due to fire or other hazards however caused.*

(Emphasis added.)

Here, Wazee has not established the existence of a public duty because Castle was providing a building service in a large commercial loft project. Second, the nature of the service performed by Castle, while important, was not an essential service to members of the public. Third, it is undisputed that the contract between Wazee and Castle was fairly entered into and resulted from arm's length bargaining. Fourth, the intention of the parties was clearly expressed in the contract between Wazee and Castle that Wazee waived all rights of action against Castle for damages resulting from a fire. Therefore, we conclude, under the circumstances presented here, that the trial court properly determined that the exculpatory clause at issue was valid.

Our conclusion is supported by *Commercial Union Assurance Co. v. Brown Co.,* 120 N.H. 620, 625, 419 A.2d 1111, 1114 (1980), in which the New Hampshire Supreme Court held that a contract clause identical to that at issue here operated to "allocate the insurance burdens of the parties" and did not violate public policy. *See also Chadwick v. CSI, Ltd.,* 137 N.H. 515, 629 A.2d 820 (1993)(identical exculpatory clause held valid in construction dispute).

Therefore, because the exculpatory clause here does not conflict with other laws and legal precedents, we conclude that it does not violate public policy. *See United Paperworkers Int'l Union v. Misco, Inc., supra,* 484 U.S. at 43, 108 S.Ct. at 373.

### III. Willful and Wanton Conduct

Wazee next contends the trial court erred in applying *Jones v. Dressel* because it alleged that Castle's conduct was willful and wanton. Again, we disagree.

Here, Wazee relies on the language in *Jones v. Dressel, supra,* 623 P.2d at 376, that "in no event will [an exculpatory agreement] provide a shield against a claim for willful and wanton negligence."

However, Wazee did not allege willful and wanton conduct in the statement of claim to the arbitrator or in its complaint in the trial court. In fact, Wazee's statement of claim to the arbitrator alleged, "The fire was caused [by] the negligent installation of the boiler for which [Castle] is responsible." Thus, the validity of the exculpatory clause at issue here may properly be analyzed under *Jones,* as we have done.

In any event, even if we assume that the issue of willful and wanton conduct was prop-

erly raised by Wazee, neither the arbitrator nor the trial court found that either Castle or DRD engaged in such conduct. In these circumstances, we may assume that the arbitrator concluded that there was no willful and wanton conduct. *See McNaughton & Rodgers v. Besser*, 932 P.2d 819 (Colo. App. 1996). Absent a factual finding of willful and wanton conduct, Wazee's argument fails.

In light of this disposition, we do not address Wazee's remaining contention that the trial court erred in not reviewing the public policy issues on the merits.

The orders are affirmed.

Judge STERNBERG* and Judge CRISWELL* concur.