Samuel J. BARNETT, Plaintiff–Appellant,

v.

ELITE PROPERTIES OF AMERICA, INC., d/b/a Classic Homes, Defendant–Appellee.

No. 09CA0693.

Colorado Court of Appeals, Div. II.

May 27, 2010.

Judith Ward Mattox, Colorado Springs, CO, for Plaintiff–Appellant.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Glendon L. Laird, Katherine A. Kelley, Greenwood Village, CO, for Defendant–Appellee.

Opinion by Judge GABRIEL.

Plaintiff, Samuel J. Barnett, appeals the order of the district court confirming the arbitration award against him and in favor of defendant, Elite Properties of America, Inc., doing business as Classic Homes (Classic Homes). He also appeals the summary judgment for Classic Homes on his claims of constructive fraud and civil conspiracy, which judgment was based on the doctrine of issue preclusion. We conclude that the district court properly confirmed the arbitration award and affirm that order. We further conclude, as a matter of first impression in Colorado, that an issue actually determined in a prior proceeding is not final for issue preclusion purposes until certiorari has been resolved both in the Colorado Supreme Court and the United States Supreme Court. Accordingly, we reverse the summary judgment entered against Barnett on his constructive

fraud and civil conspiracy claims and remand those claims for further proceedings.

## I. Background

In 2002, Barnett purchased a home from Classic Homes. The purchase agreement signed by the parties included a provision mandating arbitration of disputes concerning any aspect of the parties' contract. The contract also incorporated by reference a limited warranty that, in relevant part, described the procedures to be followed during any such arbitration.

In 2005, the septic system on Barnett's property began to fail, and Barnett received a letter from the El Paso County Department of Health and Environment ordering him to repair it. Although Barnett and Classic Homes were in contact regarding the problem, and despite some apparent attempts by Classic Homes to resolve it, the septic system was not properly repaired.

In 2006, El Paso County held an administrative hearing concerning Barnett's property. The hearing officer found that Barnett's property was in violation of the Colorado Individual Sewage Disposal Systems Act (Sewage Act), §§ 25–10–101 to –113, C.R.S. 2009. She also concluded that the property violated a provision of the county board of health regulations. The hearing officer thus issued an order prohibiting Barnett from living, working, or congregating on the property, or allowing others to do so, until the problem was remedied to the satisfaction of the health department. As a result, Barnett was unable to rent the property and ultimately lost the home in foreclosure.

Barnett sued Classic Homes, alleging breach of warranty; willful misrepresentation; breach of the implied covenant of good faith and fair dealing; constructive fraud; negligence; negligence per se; continuing nuisance; violation of the Construction Defect Action Reform Act (CDARA), §§ 13–20–801 to –807, C.R.S.2009; personal injury; defamation; civil conspiracy; and violation of the Colorado Consumer Protection Act (CCPA), §§ 6–1–101 to –1120, C.R.S.2009. Classic Homes moved to compel arbitration of all of these claims. The district court ultimately granted the motion as to all of Barnett's claims except his claims for constructive fraud, civil conspiracy, and violations of the CCPA. Those claims were stayed, pending the completion of the arbitration proceedings.

In the arbitration proceedings, the arbitrator granted summary judgment for Classic Homes on Barnett's claim for defamation and on certain of his damages claims. Then, after a three-day evidentiary hearing, the arbitrator issued detailed findings of fact and conclusions of law on the remaining claims. The arbitrator concluded that Barnett was not entitled to any damages on his claims for breach of warranty, breach of the implied duty of good faith and fair dealing, misrepresentation, negligence, continuing nuisance, or outrageous conduct, the last of which was added at the time of the arbitration. On Barnett's CDARA claim, however, the arbitrator awarded Barnett $17,000 for loss of use and enjoyment of his property, as well as $3,700 for the additional utility costs that he incurred. The arbitrator also deemed Classic Homes the prevailing party in the action and awarded it its costs.

Thereafter, Barnett filed a motion in the district court to vacate the arbitration award, and Classic Homes moved to confirm the award. Classic Homes also filed a motion in the district court for summary judgment on Barnett's claims for constructive fraud, civil conspiracy, and violations of the CCPA, which had previously been stayed. As to these claims, Classic Homes argued that the arbitrator had resolved all of the underlying factual issues adversely to Barnett and, thus, each of these claims was barred by the doctrine of issue preclusion.

The court confirmed the arbitration award in full and granted Classic Homes summary judgment on Barnett's claims for constructive fraud and civil conspiracy, concluding that those claims were barred under the doctrine of issue preclusion. The court later certified these orders for immediate appeal under C.R.C.P. 54(b). The court granted only partial summary judgment on Barnett's CCPA claim, however, concluding that summary judgment was inappropriate as to that portion of the claim related to deceptive ad-

vertising. Subsequently, however, the district court granted summary judgment as to that portion of the claim and certified the judgment under C.R.C.P. 54(b). That judgment is now the subject of a separate appeal.

Barnett now appeals the district court's order confirming the arbitration award and granting summary judgment on his claims for constructive fraud and civil conspiracy.

## II. Applicable Standards of Review

■ In reviewing an order confirming or vacating an arbitration award, we review a district court's factual findings for clear error and its legal conclusions de novo. *1745 Wazee LLC v. Castle Builders Inc.*, 89 P.3d 422, 425 (Colo.App.2003). We give the determinations of the arbitrator "extreme deference," because the standard of review of arbitral awards is among the narrowest known to law. *Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir.2000).

We review de novo a court's grant of summary judgment. *Humphrey v. Whole Foods Market Rocky Mountain/Southwest L.P.*, 250 P.3d 706, —— (Colo.App.2010).

## III. The *Ingold* Standard

Barnett first argues that the district court did not properly apply the factors set forth in *Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116 (Colo.2007), in determining that the nonarbitrable claims should be stayed pending the completion of the arbitration proceedings. We are not persuaded.

■ In *Ingold*, 159 P.3d at 125, our supreme court held that "claims that are subject to an arbitration agreement must be arbitrated regardless of their joinder with non-arbitrable claims. Claims that are not subject to arbitration should be stayed or proceed separately in litigation based on the discretion of the trial court." *Id.* In deciding whether to stay nonarbitrable claims until an arbitration of arbitrable claims is completed, courts should consider whether (1) piecemeal litigation of the nonarbitrable claims could result in inconsistent determinations of factual and legal issues to be determined by the arbitrator; (2) piecemeal litigation would be inefficient because of any overlap in the fac-

tual issues to be determined in the litigation and the arbitration; (3) the arbitrable issues predominate in the lawsuit; and (4) the nonarbitrable claims are of questionable merit. *Id.* at 126.

■ Here, although Barnett generally contends that the district court failed to consider the *Ingold* factors, in the district court he focused solely on the alleged inefficiency of piecemeal litigation of the nonarbitrable claims. This, he claimed, could result in inconsistent determinations of factual and legal issues. Contrary to Barnett's assertion that the district court failed to consider this issue, the court expressly did so and found that staying the proceedings on the nonarbitrable claims was appropriate. Because Barnett does not offer any basis for concluding that the district court failed to consider the remaining *Ingold* factors, we hold that the district court correctly applied those factors and acted within its discretion by staying the proceedings.

## IV. Confirmation of Arbitration Award

Barnett next contends that the district court erred in confirming the arbitration award without making express findings regarding the arbitrator's authority. He further asserts that the district court erroneously confirmed the arbitration award because the arbitrator exceeded his powers by (1) applying the Colorado Uniform Arbitration Act (CUAA), §§ 13–22–201 to –230, C.R.S. 2009, rather than the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 (2009); (2) awarding costs under CDARA; and (3) refusing to reopen the evidence after the arbitration award was issued. Finally, he argues that the district court itself erred in applying the CUAA, rather than the FAA, when it reviewed the arbitration award. He contends that, had the court properly applied the FAA, it would have vacated the award as against public policy or because it was issued in manifest disregard of the law.

We reject each of these arguments in turn.

## A. Findings as to Arbitrator's Authority

■ Although Barnett contends that the district court erred in failing to make find-

ings regarding the extent of the arbitrator's authority, he cites no authority requiring such findings, and we are aware of none. To the extent that Barnett is asking us to impose such a new requirement on district courts reviewing arbitration awards, we decline to do so.

### B. Arbitrator's Application of the CUAA

■ We likewise reject Barnett's conclusory assertion that the district court erred in confirming the arbitration award because the arbitrator applied the CUAA, rather than the FAA. "An arbitration award is tantamount to a judgment and is entitled to be given such status by the court which reviews it. Thus, when a party attacks the validity of an arbitration award, he bears the burden of sustaining the attack." *Container Technology Corp. v. J. Gadsden Pty., Ltd.,* 781 P.2d 119, 121 (Colo.App.1989) (citation omitted). "A mere assertion of error unsupported by evidence cannot serve as a basis for vacating a judgment confirming an arbitration award." *R.P.T. of Aspen, Inc. v. Innovative Communications, Inc.,* 917 P.2d 340, 344 (Colo.App. 1996).

■ Moreover, C.A.R. 28(a)(4) states, in pertinent part, that an appellate brief must set forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and parts of the record relied on." We will not consider a bald legal proposition presented without argument or development. *People v. Simpson,* 93 P.3d 551, 555 (Colo.App.2003). Counsel must inform the court both as to the specific errors asserted and the grounds, supporting facts, and authorities to support their contentions. *Westrac, Inc. v. Walker Field,* 812 P.2d 714, 718 (Colo.App.1991).

Here, although Barnett baldly asserts that the arbitrator failed to apply the FAA and instead applied the CUAA, he never explains how the arbitrator did so or why any such alleged error requires reversal. Absent any specific assertion of error or showing of any specific grounds, facts, or authorities warranting reversal, we decline to disturb the arbitration award.

### C. Award of Costs Under CDARA

Barnett next contends that the arbitrator exceeded his authority under the purchase agreement and limited warranty by awarding costs pursuant to CDARA. We are not persuaded.

As an initial matter, we note that Barnett's precise argument is unclear to us. He appears to be asserting that the damages that he was awarded under CDARA were somehow improper, because they amounted to an award of costs, which Barnett claims was prohibited by the purchase agreement. To the extent this is Barnett's argument, which seems to run against his own interest, we reject it.

Barnett's CDARA claim sought damages for his "actual loss of the use of real or personal property." Consistent with this claim, the arbitrator found that Barnett had suffered a loss of use and enjoyment of his property and valued that loss at $1,000 per month for seventeen months, totaling $17,000. The arbitrator further awarded Barnett $3,700, reflecting the increased utility costs that he incurred as a result of problems with his septic system. At no point did the arbitrator characterize his award to Barnett as costs, nor do we perceive any basis for concluding that the award was somehow intended to cover Barnett's arbitration costs.

To the extent that Barnett is arguing, instead, that the arbitrator's cost award to Classic Homes was improper, we likewise disagree. The purchase agreement stated, in pertinent part,

> In the event that any party commences any litigation or arbitration proceeding against the other party to enforce the provisions of the Contract, the prevailing party therein shall be entitled to recover, in addition to any other relief awarded, all reasonable costs incurred in connection therewith, including reasonable attorney's fees.

Here, the arbitrator determined that Classic Homes was the prevailing party, a conclusion that Barnett has not challenged. Thus, the arbitrator properly awarded costs to Classic Homes under the purchase agreement.

### D.  Refusal to Re–Open the Evidence

■  Barnett next contends that the district court erred in confirming the arbitration award, because the arbitrator exceeded his authority when he refused Barnett's request to re-open the evidence after the award was issued.  Again, we disagree.

More than one month after the arbitrator issued his award, Barnett filed a motion to re-open the evidence and to modify the award.  Barnett contended that he learned after the arbitration award was issued that the original septic tank that was installed in 2002 was improperly assembled.  He sought to re-open the arbitration proceedings to introduce this evidence.  The arbitrator treated Barnett's motion as a motion for a new trial based on newly discovered evidence and denied it.

Whether we accept Barnett's characterization of the motion as one to re-open the evidence or the arbitrator's characterization of it as a motion for a new trial, we conclude that the arbitrator did not exceed his authority by denying it.

To the extent that Barnett's motion is properly characterized as a motion to re-open the evidence, we conclude that it was untimely.  The parties' arbitration agreement provided that any arbitration thereunder was subject to the American Arbitration Association's Construction Industry Arbitration Rules.  Pursuant to the version of those rules that was in effect at the time of the arbitration in this case, an arbitrator's power to re-open an arbitration was limited.  As pertinent here, the rules provided, "The hearing may be reopened on the arbitrator's initiative, or by direction of the arbitrator upon application of a party, at any time *before* the award is made."  Am. Arbitration Ass'n Rules R–37 (emphasis added).  In this case, Barnett did not file his motion until *after* the award had been issued.  Accordingly, his request was untimely. *See Capgemini U.S. LLC v. Sorensen,* 2005 WL 1560482, at *7 (S.D.N.Y. No. 04 Civ. 7584(JGK), July 1, 2005) (unpublished opinion and order) (petitioner was not denied a fair hearing or an opportunity to be heard when it could have sought but failed to seek to re-open the evidence before the arbitration award was made).

■  To the extent Barnett's motion is instead characterized as a motion for a new trial based on newly discovered evidence, we likewise conclude that the arbitrator correctly denied it, because he had no authority to grant it.  Generally, once arbitrators have executed their awards and declared their decisions, they have no power to proceed further. *Air Line Pilots Ass'n v. Northwest Airlines, Inc.,* 498 F.Supp. 613, 618 (D.Minn. 1980).  Thus, once their awards are issued, arbitrators may not order rehearings or amend the awards. *Id.* Arbitrators are, however, empowered to correct obvious mistakes appearing on the face of the awards and to adjudicate issues that were submitted but not resolved in the awards. *See, e.g., La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 573 (3d Cir.1967).

Here, Barnett did not allege either a mistake on the face of the arbitration award or an issue that was submitted to the arbitrator but not resolved.  Rather, he sought an entirely new trial in which he could introduce new or different evidence.  For the reasons set forth above, the arbitrator had no authority to grant such relief.

### E.  District Court's Application of the CUAA

Barnett next contends that the district court erred in confirming the arbitration award and denying his motion to vacate that award, because the court failed to apply the FAA, which Barnett asserts provides unique bases on which a district court can vacate an arbitration award.  Specifically, Barnett contends that the FAA allows a court to vacate an arbitration award if the award violates public policy or reflects an arbitrator's manifest disregard of the law and that the district court should have vacated the award on those grounds.  Again, we are not persuaded.

Various courts have cited violations of public policy and manifest disregard of the law as among the handful of "judicially created reasons" allowing a court to vacate an arbitration award under the FAA. *See, e.g., 1745 Wazee LLC,* 89 P.3d at 425.  In *Hall Street*

*Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584–90, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), however, the Supreme Court held that sections 10 and 11 of the FAA list the exclusive bases on which a court may vacate or modify an arbitration award pursuant to that Act, thereby calling into question whether violations of public policy and manifest disregard of the law remain viable grounds for challenging an arbitration award under the FAA. In *Stolt–Nielsen S.A. v. Animal-Feeds Int'l Corp.*, — U.S. —, — n. 3, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), however, the Court stated, "We do not decide whether ' "manifest disregard" ' survives our decision in [*Hall Street Associates* ] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10." The Court then proceeded to assume for purposes of argument that such a standard applied and then found it to be satisfied on the facts before it. *Id.*

In light of these statements by the Supreme Court, the continuing viability of violations of public policy and manifest disregard of the law as bases for attacking an arbitration award under the FAA is unclear. We need not resolve whether these doctrines apply here, however, because even if they do, we conclude that Barnett is not entitled to the relief he requests.

"To be overturned on the ground that it violates public policy, an arbitration award must create an 'explicit conflict with other "laws and legal precedents," keeping in mind the admonition that an arbitration award is not to be lightly overturned.' " *1745 Wazee LLC*, 89 P.3d at 425–26 (quoting *Seymour v. Blue Cross/Blue Shield*, 988 F.2d 1020, 1024 (10th Cir.1993)). A violation of public policy must be clearly shown before an arbitration award will be vacated. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

In order to vacate an arbitration award on the grounds of manifest disregard of the law, a court must find that the arbitrator knew of and explicitly disregarded governing law. *Ahluwalia v. QFA Royalties, LLC*, 226 P.3d 1093, 1097 (Colo.App.2009) *(cert. granted*

Mar. 15, 2010). Mere error in applying the law, however, is insufficient. *Id.*

Here, Barnett has failed to establish either a violation of public policy or manifest disregard of the law.

Barnett appears to allege that the arbitration award violated public policy because Classic Homes violated the Sewage Act. Barnett has failed to show, however, how the arbitration award was either illegal or in explicit conflict with other laws and legal precedents. Nor has he shown, as he appears to claim, that the award somehow condones violations of the Sewage Act. *See Eastern Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 65, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000) (noting that, although arbitration award reinstated an employee who had used drugs, the award did not condone drug use). The arbitrator simply ruled for Barnett on certain claims and against him on others. Nothing in this award violated public policy or condoned illegal conduct.

Barnett's conclusory assertion that the arbitrator manifestly disregarded the law fares no better. Barnett never explains how the arbitrator manifestly disregarded the law. Rather, he appears to base his argument on an assertion that the arbitrator failed to issue findings of fact or conclusions of law when he granted summary judgment in favor of Classic Homes. Contrary to Barnett's assertion, however, "[i]n the absence of a statute or provision in the arbitration agreement, an arbitration award need not recite specific findings of fact and conclusions of law." *Columbine Valley Constr. Co. v. Board of Directors*, 626 P.2d 686, 695 (Colo.1981); *see also Treadwell v. Village Homes of Colorado, Inc.*, 222 P.3d 398, 401 (Colo.App.2009) ("[A]rbitrators are not required to explain their reasons for issuing awards authorized by an agreement.").

Here, Barnett has cited no statute requiring written or oral findings of fact or conclusions of law. Nor does he cite any provision in the purchase agreement or limited warranty that requires such findings or conclusions, and our review of the agreements has revealed none.

In any event, the arbitrator noted that he had granted summary judgment for the reasons set forth in Classic Homes' motion and supporting papers. Such a ruling effectively adopted the factual assertions and legal conclusions contained in those papers and amply explained the court's reasoning. *See Uptime Corp. v. Colorado Research Corp.*, 161 Colo. 87, 93, 420 P.2d 232, 235 (1966) ("[I]f, [a]fter careful study, the trial judge concludes that the findings prepared by a party correctly state both the law and the facts, then there is no good reason why he may not adopt them as his own.").

For these reasons, we reject Barnett's assertion that the district court erred by failing to apply the FAA when it confirmed the arbitration award and denied Barnett's motion to vacate that award.

## V. Summary Judgment on Remaining Claims

Finally, Barnett argues that the district court erred in applying the doctrine of issue preclusion to grant Classic Homes' motion for summary judgment on his constructive fraud and civil conspiracy claims. We agree that applying the issue preclusion doctrine here was premature.

### A. Arbitration and Collateral Estoppel

The doctrine of issue preclusion applies to issues decided in arbitration. *Guaranty Nat'l Ins. Co. v. Williams*, 982 P.2d 306, 308 (Colo.1999). As in other types of proceedings, issue preclusion bars relitigation of an issue if (1) the issue precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party in the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted has had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

In this case, the second and fourth elements are easily satisfied. Barnett was a party in the arbitration proceedings, and he had a full and fair opportunity, during a three-day evidentiary hearing, to litigate the issues involved.

Although it is not clear whether the issues underlying Barnett's deceptive advertising claim are identical to issues determined in the arbitration proceedings, we need not decide that question because we conclude that the arbitration proceeding is not yet final for issue preclusion purposes. Thus, application of the doctrine here was premature.

In *Rantz v. Kaufman*, 109 P.3d 132, 141 (Colo.2005), our supreme court held that "for the purposes of issue preclusion, a judgment that is still pending on appeal is not final." In reaching this conclusion, the court noted that it had previously held "that 'in order to be accorded preclusive effect, a judgment must be "sufficiently firm" in the sense that it was not tentative, the parties had an opportunity to be heard, and *there was an opportunity for review*.' " *Id.* (quoting *Carpenter v. Young*, 773 P.2d 561, 568 (Colo. 1989); emphasis in original). The court opined, "Pronouncing a judgment to be final while it is still pending on appeal would negate [the requirement that the parties have an opportunity for review]." *Id.*

In this opinion, we are affirming the district court's confirmation of the arbitration award on which the court relied in applying the doctrine of issue preclusion. This raises a question not directly addressed in *Rantz*, namely, whether a judgment is final after a direct appeal is concluded but while certiorari is unresolved. As a matter of first impression in Colorado, we hold that a judgment is not final for purposes of issue preclusion until certiorari has been resolved both in the Colorado Supreme Court and the United States Supreme Court. Certiorari can be resolved in any of three ways: (1) the parties fail to file a timely petition for certiorari, (2) the court denies the petition for certiorari, or (3) the court issues an opinion after granting certiorari.

Although no Colorado appellate court has addressed the question of whether the reasoning in *Rantz* should be extended to petitions for certiorari, other jurisdictions that have adopted a finality rule like the rule announced in *Rantz* have answered this question affirmatively. For example, in *Geographic Expeditions, Inc. v. Estate of Lhot-*

*ka,* 599 F.3d 1102, 1105 n. 3 (9th Cir.2010), the Ninth Circuit held that under California law, a judgment is not final for the purposes of issue preclusion until it is free from the potential of direct attack and no further direct appeal could be taken. Because a petition for certiorari was pending before the state supreme court in that case, the state court judgment was not yet final and could not be used to preclude the litigation of the merits of the plaintiff's claims. *Id.; see also National Union Fire Ins. Co. v. Stites Prof'l Law Corp.,* 235 Cal.App.3d 1718, 1 Cal. Rptr.2d 570, 574 (1991) (where arbitrator's award was open to direct attack by appeal or otherwise, it was not final for issue preclusion purposes).

Similarly, in *Benham v. Plotner,* 795 P.2d 510, 512 (Okla.1990), the Oklahoma Supreme Court held, "A judgment is not final in the sense that it binds the parties [for purposes of issue preclusion] until the losing party has failed properly to perfect an appeal, or until the highest court, whose jurisdiction is invoked by either party, upholds the decision of the trial court."

The Georgia Court of Appeals has likewise held that an appeal of a prior court judgment suspends the operation of any preclusive effect of that judgment pending the appeal. *CS–Lakeview at Gwinnett, Inc. v. Retail Dev. Partners,* 268 Ga.App. 480, 602 S.E.2d 140, 142 (2004). Thus, that court held that a judgment is not final as long as there is a right to appellate review. *Id.*

Finally, the Illinois Appellate Court has opined, "Under settled Illinois law, a judgment is not final for [issue preclusion] purposes until the potential for appellate review has been exhausted." *People v. One 1984 Pontiac Parisienne Sedan,* 323 Ill.App.3d 717, 257 Ill.Dec. 700, 754 N.E.2d 358, 362 (2001).

We are persuaded by the reasoning of these decisions here, particularly given the fact that *Rantz's* holding that a judgment that is still pending on appeal is not final was stated unequivocally and without qualification. Moreover, our supreme court's concern with negating a party's appellate rights by deeming a judgment final during the pendency of an appeal is equally applicable to a

party's rights while certiorari is unresolved. Finally, although we acknowledge the risks to judicial efficiency and of delay resulting from a refusal to apply the doctrine of issue preclusion while certiorari is unresolved, we note the equally substantial risks of inefficiency and increased cost to the parties were a court to enter a judgment based on the doctrine of issue preclusion only to have that judgment undermined if the underlying judgment were to be overturned on certiorari review.

For these reasons, we conclude that a judgment is not final for purposes of issue preclusion until certiorari has been resolved in both the Colorado Supreme Court and the United States Supreme Court, as defined above. We thus hold that the district court erred when it applied the doctrine of issue preclusion to enter summary judgment in favor of Classic Homes on Barnett's constructive fraud and civil conspiracy claims.

This does not end our inquiry, however, because if the record supports other bases on which the district court properly could have granted summary judgment, we may still affirm that judgment. *See Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 406 (Colo.App.2004) (court of appeals may affirm on any ground supported by the record). Accordingly, we examine each of the claims at issue in turn.

## B. Constructive Fraud

■ With respect to Barnett's constructive fraud claim, Classic Homes argues that we can affirm the district court's judgment because Barnett failed to allege or prove the existence of a fiduciary relationship between himself and Classic Homes. We disagree because, contrary to Classic Homes' assertion, the existence of a fiduciary relationship is not required to prove a claim for constructive fraud.

■ "Constructive fraud" has been defined as a breach of a legal or equitable duty that the law declares to be fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests, irrespective of the moral guilt of the perpetrator. 37 C.J.S.

*Fraud* § 5 (2008). Constructive fraud is an equitable theory of relief. *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 728 (7th Cir.1994). To establish a claim for constructive fraud, a plaintiff must show (1) the existence of a duty due to a relationship between the parties; (2) violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party proximately caused thereby; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Id.*

Contrary to Classic Homes' assertion, the existence of a fiduciary duty is not an element of a constructive fraud claim. *See Evans Indus. Coatings, Inc. v. Chancery Court*, 315 Ark. 728, 870 S.W.2d 701, 703 (1994) (noting that a fiduciary relationship is not vital to a finding of constructive fraud). Accordingly, Barnett's failure to establish a fiduciary relationship does not defeat his constructive fraud claim.

For these reasons, we reverse the summary judgment on Barnett's constructive fraud claim and remand this claim to the district court. On remand, the district court should stay this claim until certiorari has been resolved both in the Colorado Supreme Court and the United States Supreme Court. Thereafter, if the arbitration award still stands, then the district court may reenter its order granting summary judgment on this claim.

### C. Civil Conspiracy

As noted above, the district court granted summary judgment on Barnett's civil conspiracy claim solely on the ground of issue preclusion. Classic Homes has not asserted an alternative basis on which we may properly affirm the district court's grant of summary judgment on this claim. Accordingly, we reverse that part of the judgment and remand this claim to the district court for further proceedings. As with Barnett's constructive fraud claim, on remand, the district court should stay this claim until certiorari has been resolved both in the Colorado Supreme Court and the United States Supreme

Court. Thereafter, if the arbitration award still stands, then the district court may reenter its order granting summary judgment on this claim.

### VI. Conclusion

For these reasons, the order confirming the arbitration award is affirmed, the judgment on Barnett's constructive fraud and civil conspiracy claims is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge BOORAS concur.