24CA0974 Peo in Interest of LRR 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0974
Weld County District Court No. 22JV119
Honorable W. Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.R.R., a Child,

and Concerning L.J.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, L.J.S. (father) appeals the juvenile court's judgment terminating his parent-child legal relationship with L.R.R. (the child).  Father's sole contention on appeal is that the court erred in finding that no less drastic alternative to termination existed.  We affirm.

## I.    Background

¶ 2    In August 2022, the Weld County Department of Human Services received a report that the child may have been born exposed to substances because mother tested positive for illicit substances at the time of the child's birth.  Further concerns later arose about father's substance use, his incarceration, and potential domestic violence between the parents.  Based upon these concerns, the Department initiated a dependency and neglect proceeding.

¶ 3    The juvenile court initially placed the child with mother and maternal great grandmother.  However, after mother relapsed, the child was placed with maternal cousins as a kinship placement, where the child remained for the duration of the proceeding.

¶ 4    Meanwhile, the parents admitted the allegations in the petition and the juvenile court adjudicated the child dependent and neglected.  The court then adopted treatment plans for the parents.

¶ 5    In July 2023, father filed a motion to change the child's placement from maternal cousins to paternal grandmother.  And in January 2024, the Department moved to terminate parental rights.

¶ 6    The court conducted a setting conference for the termination hearing the next month.  At that conference, the parties discussed father's placement motion.  The county attorney suggested that the court address father's motion at the termination hearing.  Father didn't object to that approach, and the court agreed to hear the placement issue at the termination hearing.  Following a two-day combined evidentiary hearing, the court terminated parental rights and denied father's motion for placement.

## II.    Analysis

¶ 7    Father argues that the juvenile court erred by finding that there were no less drastic alternatives to termination of his parental rights.  We conclude the court did not err.

## A. Standard of Review and Applicable Law

¶ 8 Whether a juvenile court properly terminated parental rights presents a mixed question of law and fact because it involves the application of the termination statute to evidentiary facts. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review de novo the proper legal standard that applies in the case and the application of that standard to the particular facts. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 31.

¶ 9 However, we review the court's factual findings for clear error and will not disturb them when they are supported by the record. *Id.* at ¶ 32; *see also A.M.*, ¶ 15. "The credibility of the witnesses; the sufficiency, probative value, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence are within the discretion of the [juvenile] court." *A.M.*, ¶ 15.

¶ 10 The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child has been adjudicated dependent or neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's

3

conduct or condition is unlikely to change in a reasonable time. § 19-3-604(1)(c), C.R.S. 2024.

¶ 11    The juvenile court must consider and eliminate less drastic alternatives before terminating parental rights. *People in Interest of M.M.*, 726 P.2d 1108, 1122-23 (Colo. 1986). When making this determination, the court must give primary consideration to the child's physical, mental, and emotional conditions and needs. *See* § 19-3-604(3); *People in Interest of K.B.*, 2016 COA 21, ¶ 35.

¶ 12    When deciding whether long-term or permanent placement with a relative or other person is a viable less drastic alternative to termination, the juvenile court may consider various factors including whether an ongoing relationship with the parent would be beneficial or detrimental to the child and whether a placement prefers adoption rather than an allocation of parental responsibilities (APR). *See People in Interest of A.R.*, 2012 COA 195M, ¶ 38; *People in Interest of Z.M.*, 2020 COA 3M, ¶ 31.

¶ 13    For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs. *A.M.*, ¶ 27. Rather, the proposed alternative must be the "best" option for the child. *Id.* Therefore, if the court considers a less drastic alternative but finds

that termination is in the child's best interests, it must reject the proposed alternative and order termination. *Id.* at ¶ 32. Permanent placement is not a viable less drastic alternative if the child needs a stable, permanent home that can only be assured by adoption. *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011).

¶ 14 When the juvenile court considers a less drastic alternative and still determines that the termination of parental rights is in the child's best interests, we are bound to affirm that decision if the court's findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 80.

### B. The Juvenile Court Didn't Err by Finding that There Was No Less Drastic Alternative to Termination

¶ 15 Father contends that the juvenile court failed to properly assess whether a less drastic alternative to termination of his parental rights existed. Specifically, he asserts that (1) the court failed to make explicit findings regarding less drastic alternatives and thereby failed to fully consider the possibility of placement with paternal grandmother; and (2) the court erred when it failed to timely consider a change of kinship placement, which would have

allowed the possibility of less drastic alternatives and was in the child's best interests.

¶ 16    In advancing his first argument, father argues that the court "failed to make explicit factual findings" about the possibility of placement with paternal grandmother and failed to fully consider such placement as a less drastic alternative.  But he cites to no law, and we are aware of none, that would require a court to make explicit factual findings as to each less drastic alternative possibility.  This is because the question of whether termination is in the child's best interests is separate from the question of which placement is most appropriate in the event of termination.

¶ 17    Moreover, the record reveals the court considered the proposed change of placement as a less drastic alternative and, based on the evidence presented at the hearing, concluded that termination was in the child's best interests.  Specifically, the court found that "it [wa]s clearly not in this child's best interests, no matter what kinship placement has this child," that the court enter an APR.  In support, the court found that the child was in a home she had been in for most of her life, where she was comfortable and thriving.

¶ 18 It also found that father's involvement during the proceedings "ha[d] been sporadic and certainly not regular and consistent." The court found father had not complied with his treatment plan, was not fit, and that an ongoing relationship with the child would have a negative impact on the child. And the court found that the child had been living with maternal cousins for most of her life, that she was comfortable and thriving there, and that moving her into the care of paternal grandmother wasn't in her best interests. The record supports these findings.

¶ 19 The court heard testimony from the caseworker and an expert witness who completed a parent-child interactional assessment (PCI) with paternal grandmother, father, and the child. The court found their testimony to be credible. *A.M.*, ¶ 15.

¶ 20 The caseworker, who was qualified as an expert in child protection casework, testified that there were not any less drastic alternatives to termination and that termination was in the child's best interests. The caseworker stated that the child deserved the consistency that adoption would provide. She further testified that father had been in and out of incarceration during the life of the case and unable to develop any sort of relationship with the child

due to inconsistent family time.[1] And when father did attend family time, the record shows that the Department was often required to stop those visits because the child would become "dysregulated pretty much at the start of the visit." *See A.R.,* ¶ 38 (noting that one factor in determining whether a less drastic alternative exists is whether an ongoing relationship with the parent would be beneficial or detrimental to the child).

¶ 21 The PCI expert opined that removing the child from her current placement would be unnecessarily stressful for the child. He testified that paternal grandmother's temperament was a poor fit for the child, and that the best thing for the child was to remain where she was.

¶ 22 Father acknowledges the challenges associated with the change of placement but argues that a plan described by the PCI expert on how to transition the child to paternal grandmother was never considered by the court. He further contends that the plan could have allowed the child to be moved to maternal

---

[1] Notably, father did not dispute at termination — and does not dispute here — that he was unfit, was not in compliance with his treatment plan, and was not available to parent his child.

grandmother's care and thereby allowed for a less drastic alternative.

¶ 23 But while the PCI expert did describe a potential plan to transition the child's care to paternal grandmother, he also testified that the risks of moving the child seemed to outweigh the benefits of the child remaining in placement.

¶ 24 It's also true that paternal grandmother testified that she would be willing to accept a permanent placement option that would leave parental rights intact. But merely having a placement willing to accept an APR as an alternative to termination does not automatically mandate a court to find that it is a less drastic alternative that is in the child's best interests. The court must still make a case-specific inquiry giving primary consideration to the child's physical, mental, and emotional conditions and needs. *See* § 19-3-604(3); *K.B.*, ¶ 35.

¶ 25 As we note above, the PCI expert testified that moving the child from her placement would cause excessive and unnecessary stress, emphasizing that minimizing stress and change was in the child's best interests. The court placed weight on this testimony.

¶ 26 The caseworker, PCI expert, and paternal grandmother further agreed the child appeared bonded to the kinship providers and considered them her protectors and providers. Finally, the kinship providers testified that they would prefer adoption over an APR. *See Z.M.*, ¶ 31; *S.N-V.*, 300 P.3d at 920.

¶ 27 Because the court's findings are supported by the record, we must affirm. *B.H.*, ¶ 80.

¶ 28 Last, father asserts that the delay between his motion for placement of the child with paternal grandmother and the joint hearing on placement and termination was contrary to the child's best interests and therefore constituted error.

¶ 29 However, father fails to point to any legal support or adequately explain this assertion. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010) ("We will not consider a bald legal proposition presented without argument or development."). Therefore, we do not address it.

¶ 30 For the foregoing reasons, we conclude that the juvenile court did not err by finding that there were no less drastic alternatives to termination of father's parental rights.

## III.    Disposition

The judgment is affirmed.

JUDGE HARRIS and JUDGE YUN concur.