25CA0659 Peo in Interest of SIR 10-02-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 25CA0659
Logan County District Court No. 24JV30000
Honorable Carl S. McGuire III, Judge

_____

The People of the State of Colorado,

Appellee,

In the Interest of S.I.R. and J.L., Children,

and Concerning A.L. and B.R.,

Appellants.

_____

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE LIPINSKY
Dunn and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 2, 2025

_____

Alan W. Samber, County Attorney, Jeffrey C. Koy, Special County Attorney, Catherine Kleindl, Special County Attorney, Englewood, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant A.L.

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant B.R.

¶ 1    A.L. (mother) and B.R. (father) appeal the juvenile court's judgment terminating their parent-child legal relationships with S.I.R. and J.L. (the children). We affirm the judgment.

## I.    Background

¶ 2    The Logan County Department of Human Services received a referral that S.I.R. had been born "affected by substance exposure." It opened a voluntary case with father and created a safety plan for the children. The record shows that, at the time the Department created the safety plan, (1) father lived with the paternal grandfather, maintained contact with the Department, and participated in services; (2) the paternal grandfather agreed to notify the Department about any changes in father's sobriety or behavior; and (3) the Department supervised mother's contact with the children.

¶ 3    Four months later, the Department filed a petition in dependency or neglect in which it alleged that the safety plan "had been broken and [the paternal grandfather] had no longer been able to keep the children safe." The court granted the Department temporary custody of the children.

¶ 4     The court adjudicated the children dependent or neglected and adopted treatment plans for the parents.  The children's guardian ad litem later moved to terminate the parents' parental rights.

¶ 5     Eighteen months after the Department became involved with the children and fourteen months after it filed the petition, the court terminated mother's and father's parental rights following a contested evidentiary hearing.

## II.     Denial of Continuance

¶ 6     Father first contends that the court erred by denying his motion to continue the termination hearing because the Department allegedly failed to comply with its disclosure and discovery obligations.  We discern no error.

¶ 7     Adjudication of a motion for continuance is left to the sound discretion of the trial court, and its ruling on the requested continuance will not be disturbed absent a clear abuse of that discretion.  *People in Interest of A.J.*, 143 P.3d 1143, 1150 (Colo. App. 2006).  In ruling on the motion, the court "should balance the need for orderly and expeditious administration of justice against the facts underlying the motion, while considering the child's need for permanency."  *Id.*

¶ 8     When the expedited permanency planning requirements bind the juvenile court, as in this case, the court "shall not grant a delay unless good cause is shown and unless the court finds that the best interests of the child will be served by granting a delay." § 19-3-602(1), C.R.S. 2025; *see also* § 19-3-104, C.R.S. 2025 (hearing must not be delayed in case involving a child under six years of age unless good cause is shown).

¶ 9     In denying father's request for a continuance, the court found that the delay resulting from a continuance would not be in the children's best interests.  Father does not challenge this finding on appeal.  Even assuming that father had good cause for a continuance, the court still properly denied his request in light of its finding that a continuance was not in the children's best interests.  *See People in Interest of T.M.S.*, 2019 COA 136, ¶ 49, 454 P.3d 375, 383 (affirming the court's denial of a continuance where the parent "provided no basis to find that a delay would serve the child's best interests").

¶ 10    In addition, father includes in the continuance section of his opening brief a two-sentence argument, lacking supporting legal citations, that "to the extent . . . either counsel or substitute

counsel failed to properly request discovery, that constituted deficient performance." Because father does not develop this argument, we do not consider it on the merits. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010).

### III. Appropriate Treatment Plan

¶ 11 Next, father contends that the court erred by finding that his treatment plan was appropriate. Father asserts that he preserved this argument in his counsel's closing statement at the hearing. But the citation to the record he provides directs us to an argument regarding the Department's alleged failure to make reasonable efforts to rehabilitate father. We do not see any place in the record where father argued that his treatment plan was not appropriate. We therefore decline to address this argument on the merits. *See People in Interest of T.E.R.*, 2013 COA 73, ¶ 30, 305 P.3d 414, 419 (holding that issues not raised in the juvenile court will not be considered on appeal).

### IV. Reasonable Efforts

¶ 12 Father next contends that the court erred by finding that the Department made reasonable efforts to rehabilitate him. We discern no error.

## A. Applicable Law and Standard of Review

¶ 13 Before a juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2025, the department of human services must make reasonable efforts to rehabilitate the parent and reunite the family. §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2025. "Reasonable efforts" means the "exercise of diligence and care" for a child who is in out-of-home placement, and the reasonable efforts standard is satisfied when services are provided in accordance with section 19-3-208. § 19-1-103(114).

¶ 14 The juvenile court must consider whether the department of human services provided appropriate services to support the parent's treatment plan. *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011). However, a department of human services has "discretion to prioritize certain services or resources to address a family's most pressing needs in a way that will assist the family's overall completion of the treatment plan." *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33, 512 P.3d 132, 143. "When reviewing whether active efforts have been made," the court must be open to "recognizing that certain services address overlapping

objectives or serve as a necessary stepping stone to achieving another objective. . . . [The department's] efforts must be measured holistically rather than in isolation with respect to specific treatment plan objectives." *Id.* at ¶ 35, 512 P.3d at 143. The parent is ultimately responsible for using those services to obtain the assistance the parent needs to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011).

¶ 15    "We review the juvenile court's findings of evidentiary fact — the raw, historical data underlying the controversy — for clear error and accept them if they have record support." *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10, 486 P.3d 1201, 1204. "But we review de novo the juvenile court's legal conclusions based on those facts." *Id.* at ¶ 10, 486 P.3d at 1205. The ultimate determination of whether the Department provided reasonable efforts is a legal conclusion that we review de novo. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8, 527 P.3d 404, 407.

¶ 16    It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

## B.  Analysis

¶ 17    The court found that the Department made reasonable efforts to rehabilitate father and to reunify the family.  Specifically, the court found that the Department attempted to assist father in accessing and using identified services but that father "frustrated those efforts."  The court further found that father "refused to show up for [f]amily [e]ngagement [m]eetings, visits, or otherwise participate" in the case and, "[t]herefore, the [D]epartment ha[d] exercised reasonable efforts."

¶ 18    The record supports these findings.  The caseworker testified that, after the Department filed the dependency or neglect petition, father only communicated with her about or during family time.  Father engaged with the caseworker when she located him in jail, but he stopped contacting her a few weeks after his release.  The caseworker testified that father did not complete any of his treatment plan objectives and did not participate in the services for which she had made referrals; however, at times, he joined in family time.  The caseworker testified that she "would have to be able to be engaged with [father] in order to continue to help and assist him.  And he was not willing to come in and meet [her], or see [her], or

answer a phone call or a text message, or attend a [f]amily [e]ngagement [m]eeting."

¶ 19     While father now contends that the caseworker should have done more to engage him and assist him with housing, we are not persuaded.  Father suggests that the caseworker should have "employed the . . . assistance from law enforcement during the case" to look for him at the trailer where mother resided.  But nothing in the record suggests that such an effort would have been reasonable.  In any event, it is the parents' responsibility to engage in their court-ordered treatment plan.  *J.C.R.*, 259 P.3d at 1285.

¶ 20     The court therefore properly considered the uncontested evidence of father's lack of engagement when it determined that the Department made reasonable efforts to rehabilitate him.  *See People in Interest of A.V.*, 2012 COA 210, ¶ 12, 297 P.3d 1019, 1022 (holding that a court may consider a parent's unwillingness to participate in treatment when determining whether a department of human services made reasonable efforts to rehabilitate the parent).

¶ 21     Moreover, the Department satisfied the reasonable efforts standard.  It devised a treatment plan for father; provided referrals for substance abuse treatment, a fatherhood program, sobriety

monitoring, and parenting education; made bus passes available; supervised family time; and facilitated placement services for the children.

¶ 22     Given this evidence, we will not disturb the court's findings and legal conclusions on reasonable efforts.

## V.     Less Drastic Alternatives

¶ 23     Mother and father contend that the court erred by finding there were no less drastic alternatives to termination.  We disagree.

### A.     Applicable Law and Standard of Review

¶ 24     When considering less drastic alternatives, the court bases its decision on the best interests of the child, giving primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3).  A juvenile court may consider and weigh various factors in determining the viability of a less drastic alternative, including whether (1) a less drastic alternative is available, *People in Interest of D.P.*, 160 P.3d 351, 356 (Colo. App. 2007), and (2) an alternative option provides the child with adequate permanency or meets the child's needs, *People in Interest of T.E.M.*, 124 P.3d 905, 910 (Colo. App. 2005).

9

¶ 25 For a less drastic alternative to be viable, it must do more than "adequate[ly]" meet a child's needs; rather, it must be the child's best option. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27, 480 P.3d 682, 688. Therefore, if the court considers a less drastic alternative but finds instead that termination is in the child's best interest, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32, 480 P.3d at 689.

¶ 26 When the juvenile court considers the availability of a less drastic alternative and still determines that termination of the parent's rights would be in the child's best interests, we must affirm the court's decision if the record supports its findings. *People in Interest of B.H.*, 2021 CO 39, ¶ 80, 488 P.3d 1026, 1042.

## B. Analysis

¶ 27 The court found "[t]here is no less drastic alternative to termination of the parent-child legal relationships which would meet the physical, emotional, and mental health needs of the children." Further, the court found that termination was in the children's best interests.

¶ 28 The record supports these findings. The caseworker testified that, when mother and father attended family time, there was not

much interaction between S.I.R. and mother or between J.L. and father. Mother and father stopped coming to family time nine months before the termination hearing. Father briefly reengaged in family time without mother; he last saw the children five months before the hearing. Further, the caseworker testified that neither parent understood the children's developmental needs.

¶ 29    Because the dependency or neglect case opened when S.I.R. was just four months old, the court was required to facilitate permanency for the children "as expeditiously as possible." § 19-3-702(5)(c), C.R.S. 2025; *see* § 19-1-123(1)(a), C.R.S. 2025 (explaining that expedited permanency planning provisions apply when at least one of the children was less than six years old when the petition was filed).

¶ 30    Mother and father separately contend that the Department did not do enough, frequently enough, to identify all relatives who might have been willing to accept an allocation of parental responsibilities (APR) for the children. A "department must evaluate a reasonable number of persons suggested to it as possible placements." *People in Interest of D.B-J.*, 89 P.3d 530, 532 (Colo. App. 2004). But we are not aware of, and neither parent directs us

to, any requirement that a department of human services explore "all" family options, as mother and father contend. In any event, even if the Department identified a family member willing to accept an APR, the court could properly determine that such an arrangement would not adequately meet the needs of the children. *See T.E.M.*, 124 P.3d at 910 (holding that a child's permanent placement with a relative may not be a viable alternative if it does not provide adequate permanence or otherwise meet the child's needs); *D.B-J.*, 89 P.3d at 532 (concluding that a proposed placement is not a less drastic alternative to termination if the placement provider lacks appreciation of a child's needs and conditions); *see also A.M.*, ¶ 31, 480 P.3d at 689 ("Primary consideration of the child's physical, mental, and emotional condition and needs requires more than a mere assessment of adequacy in order to satisfy the overall intent of the Children's Code.").

¶ 31 Because the court found, with record support, that no alternative short of termination would meet the children's needs, whether someone might have been able to serve as the children's placement provider was immaterial. We therefore discern no error

12

in the court's finding that there were no less drastic alternatives to termination.

## VI. Fit Within a Reasonable Time

¶ 32    Mother also contends that the court erred by determining that she could not become fit within a reasonable time. Specifically, mother argues that, "had the case remained open, [she] could have continued to build a relationship with her children and made efforts to address her sobriety, thereby becoming a fit parent." We are not convinced.

¶ 33    "In determining whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 24, 524 P.3d 1209, 1216.

¶ 34    What constitutes a reasonable time is fact-specific and must be determined by considering the physical, mental, and emotional conditions and needs of each child. *Id.* at ¶ 25, 524 P.3d at 1216. A "reasonable time" is not an indefinite time. *Id.* And because the expedited permanency planning provisions applied, the court

13

needed to place the children in a permanent home. *See*
§§ 19-1-102(1.6), 19-1-123, C.R.S. 2025.

¶ 35 The court found that mother was unfit and unlikely to change within a reasonable time and that she had neglected and "wholly abandoned" the children. Moreover, the court found that mother failed to attend family time without good cause and exhibited the same problems with substance dependence that led the Department to file the case. And the court took judicial notice of a prior case in which a court adjudicated another one of mother's children dependent or neglected.

¶ 36 The record supports these findings. The uncontested evidence established that mother did not make progress on any of her treatment plan's objectives. The caseworker testified that, for the first six months of the case, mother only had contact with the Department during family time. Mother subsequently did not maintain contact with the Department, complete an alcohol or drug evaluation, or participate in any of the services the Department offered. The caseworker testified that, despite her efforts to engage with mother, at the time of the termination hearing, mother had not seen the children for nine months. Moreover, mother did not

14

appear at the hearing and had not been in contact with the Department for at least three months.

¶ 37 Nothing in the record supports mother's contention that she would have reengaged if the Department had given her more time to become a fit parent. We therefore discern no error in the court's finding that mother could not become fit within a reasonable time.

## VII. Disposition

¶ 38 The judgment is affirmed.

JUDGE DUNN and JUDGE KUHN concur.