**Harinderpal S. AHLUWALIA,
Plaintiff–Appellant,**

v.

**QFA ROYALTIES, LLC,
Defendant–Appellee.**

No. 08CA0162.

Colorado Court of Appeals,
Div. III.

Feb. 5, 2009.

1094

Miller & Harrison, LLC, Robert Miller, Joan Clifford, Boulder, Colorado; Haynes & Haynes, LLC, David M. Haynes, Boulder, Colorado, for Plaintiff–Appellant.

Perkins Coie, LLP, Leonard H. MacPhee, Michael A. Sink, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge NIETO.*

Plaintiff, Harinderpal S. Ahluwalia, appeals the district court order confirming an arbitration award entered against him and in favor of defendant, QFA Royalties, LLC

(QFA). Ahluwalia also appeals from a subsequent final judgment entered on the confirmation order, which included the monetary amount of the award, attorney fees, post-award interest, and a provision authorizing post-judgment interest. We reverse the portion of the judgment authorizing compounding of post-judgment interest and remand for modification of that portion of the judgment and for an award of appellate attorney fees and costs. In all other respects, we affirm the district court's order and judgment.

Ahluwalia and QFA entered into franchise agreements concerning three Quizno's restaurants run by Ahluwalia in California. The first of these agreements (the 2001 Agreement) included a "California Rider" provision requiring submission to binding arbitration of all "controversies, disputes, or claims" between the parties arising out of or relating to "this Agreement or any other agreement between [the parties]" or "the validity of this Agreement or any other agreement between [the parties]."

In 2004, the parties executed similar franchise agreements concerning the operation of two additional stores (the 2004 Agreements). The 2004 Agreements contained provisions naming the Denver District Court and the United States District Court in Colorado as the forums "to resolve any disputes arising between" the parties. Neither of the 2004 Agreements referenced arbitration or the "California Rider" contained in the 2001 Agreement.

After Ahluwalia failed to comply with certain provisions in the franchise agreements, QFA terminated all three agreements and then filed a demand for arbitration based upon the "California Rider" in the 2001 Agreement.

Ahluwalia did not raise the issue of arbitrability in his answer, and he participated in the arbitration process for many months without objecting to the scope of the proceedings. However, in his prehearing brief, Ahluwalia asserted that the arbitration should be limited to disputes under the 2001

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

Agreement and should not cover any claims under the 2004 Agreements. At the beginning of the arbitration hearing, Ahluwalia's counsel also indicated he was not submitting to jurisdiction regarding "claims that aren't subject to arbitration."

The arbitrator concluded that disputes under all three franchise agreements were subject to arbitration. He also rejected Ahluwalia's argument that all three agreements were void or unenforceable because QFA had not properly registered to conduct business in California.

The arbitrator ultimately determined that Ahluwalia had breached the franchise agreements and that QFA had been justified in terminating the agreements. The arbitrator awarded QFA a total of $639,339.17, which included damages, interest, attorney fees, and partial reimbursement of administrative fees.

Thereafter, Ahluwalia filed a motion in the district court seeking to vacate the arbitration award. He argued that there was no valid agreement to arbitrate disputes under any of the franchise agreements because the forum selection and integration clauses contained in the 2004 Agreements had superseded the arbitration clause in the 2001 Agreement. Ahluwalia also again argued that the franchise agreements were void because QFA had not properly registered to conduct business in California.

QFA filed a response and cross-motion seeking confirmation of the award. After full briefing, the district court entered an order granting QFA's motion to confirm the award. In rejecting Ahluwalia's arguments, the district court applied the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16 and reviewed the arbitrator's award under a deferential "manifest disregard of the law" standard.

QFA then filed motions seeking additional attorney fees, post-award interest, and post-judgment interest. The district court granted those motions and subsequently entered judgment against Ahluwalia in the total amount of $751,553.34.

## I.

Ahluwalia contends that the district court erred in declining to vacate the award on grounds that the arbitration clause in the 2001 Agreement was partially or completely superseded by the 2004 Agreements. We perceive no such error.

## A.

▬ Both parties agree that, because the franchise agreements involved interstate commerce, the provisions of the FAA, 9 U.S.C. §§ 1–16, apply. *See Fonden v. U.S. Home Corp.*, 85 P.3d 600, 602 (Colo.App. 2003) (if contract is related to transaction in interstate commerce, FAA governs enforcement of its arbitration provisions in both state and federal court); *see also 1745 Wazee LLC v. Castle Builders Inc.*, 89 P.3d 422, 425 (Colo.App.2003).

Under § 10 of the FAA, a district court is only permitted to vacate an arbitration award if it finds that: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone a hearing, in refusing to hear evidence, or in misbehaving in some other way; or (4) the arbitrators exceeded their powers or imperfectly executed them.

*Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir.2001). Courts applying the FAA also recognize several judicially created reasons for vacating an arbitration award, including an arbitrator's "manifest disregard of the law." *Sheldon*, 269 F.3d at 1206. Manifest disregard of the law means the arbitrator willfully ignored the governing law. To justify setting aside an arbitration award, it must be shown that the arbitrator was aware of the law and explicitly disregarded it. Mere error in the interpretation or application of the law by an arbitrator is not grounds for setting aside an arbitration award. *Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1176 (10th Cir.2006). *See Coors Brewing Co. v. Cabo*, 114 P.3d 60 (Colo.App. 2004) (discussing treatment of manifest disregard of the law in the Federal Circuits).

In *Coors Brewing Co.*, the division declined to adopt manifest disregard of the law as grounds for vacating an arbitration award under the Colorado Uniform Arbitration Act, § 13–22–201 et. seq., C.R.S.2007. Our conclusion here is not in conflict with that opinion because here we are applying the FAA.

### B.

Initially, we consider and reject QFA's assertions that Ahluwalia waived his right to challenge the arbitrability of all or portions of the dispute.

■ If a party willingly allows an issue to be submitted to arbitration, it cannot await the outcome and later argue that the arbitrator lacked authority to decide the matter. *See AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir.2000); *see also Minneapolis–St. Paul Mailers Union v. Nw. Publ'ns, Inc.*, 379 F.3d 502, 509 (8th Cir.2004). If, however, the party clearly and explicitly reserves the right to object to arbitrability, participation in the arbitration does not preclude the party from subsequently challenging the arbitrator's authority in court. *AGCO Corp.*, 216 F.3d at 593; *see Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003).

Here, we are satisfied that Ahluwalia's objection to the arbitrator's "jurisdiction" both before and during the arbitration hearing was sufficient to preserve that issue and that Ahluwalia did not waive his objection concerning arbitrability.

Nor are we persuaded by QFA's assertion that the arbitrator actually determined Ahluwalia waived his right to challenge arbitrability and that we should defer to that determination. The arbitrator did reference Ahluwalia's participation in the arbitration and last minute objection to arbitrability. However, that reference was not a finding of waiver but, rather, was part of a determination that the parties' conduct supported a substantive ruling that disputes under all three agreements were subject to arbitration.

### C.

Ahluwalia contends that the district court should have decided the arbitrability issue de novo and that it erred in applying a deferential "manifest disregard" standard of review to the arbitrator's decision. We disagree.

■ We review de novo the question of whether arbitrability is for the court or for the arbitrator to decide. *See Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir.2005); *Bell v. Cendant Corp.*, 293 F.3d 563, 565–66 (2d Cir.2002).

■ Under the FAA, there is a general presumption that the issue of arbitrability should be resolved by the courts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–46, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Contec Corp.*, 398 F.3d at 208. Indeed, the question of arbitrability is for judicial determination unless the parties clearly and unmistakably provide otherwise. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir.2003).

Here, the arbitration clause in the 2001 Agreement specifically provided that the arbitration proceeding would be conducted "according to the then current commercial arbitration rules of the American Arbitration Association." At the time of the arbitration, Rule R–7(a) of the AAA Commercial Arbitration Rules provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

Numerous federal and state court decisions hold that if, as here, the parties explicitly incorporate rules that empower the arbitrator to determine issues of arbitrability, that incorporation constitutes clear and unmistakable evidence of intent to delegate those issues to the arbitrator. *See Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed.Cir.2006); *Contec Corp.*, 398 F.3d at 208; *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir.2005); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 474 (1st Cir.1989); *Citifinancial, Inc. v. Newton*, 359 F.Supp.2d 545, 549–52

(S.D.Miss.2005); *Sleeper Farms v. Agway, Inc.*, 211 F.Supp.2d 197, 200 (D.Me.2002), *aff'd,* 506 F.3d 98 (1st Cir.2007); *CitiFinancial Corp. v. Peoples,* 973 So.2d 332, 340 (Ala.2007); *Rodriguez v. Am. Techs., Inc.,* 136 Cal.App.4th 1110, 39 Cal.Rptr.3d 437, 446 (2006).

We find this authority persuasive and conclude that, by incorporating the AAA Commercial Arbitration Rules into their agreement, the parties authorized the arbitrator to decide arbitrability issues, including whether all three franchise agreements were subject to the 2001 arbitration clause. *See BFN–Greeley, LLC v. Adair Group, Inc.,* 141 P.3d 937, 940 (Colo.App.2006). Consequently, the district court properly applied a deferential standard to the arbitrator's decision on this issue. *See First Options,* 514 U.S. at 943, 115 S.Ct. 1920; *Vail–Ballou Press, Inc. v. Graphic Commc'ns Int'l Union,* 480 F.Supp.2d 568, 572 (N.D.N.Y.2007) (party is bound by arbitrator's decision that dispute was arbitrable unless vacatur is warranted under the limited circumstances set forth in FAA section 10(a)).

### D.

▮ We further conclude that the district court properly upheld the arbitrator's arbitrability ruling that disputes concerning all three franchise agreements were subject to arbitration.

The arbitrator noted that the arbitration clause in the 2001 Agreement specifically applied to "any claims arising out of or related to ... this Agreement or *any other agreement between Franchisor and Franchisee*" (emphasis added). He then determined that, under this plain language, claims arising under the 2004 Agreements were also subject to arbitration. He further found that his conclusion was supported by "the parties' conduct throughout the course of their dispute and this arbitration." Specifically, the arbitrator found that the issue was not raised in Ahluwalia's answer, that Ahluwalia asserted his own claims against QFA in the arbitration, and that the issue was only raised on the eve of the arbitration hearing.

Ahluwalia argues that the forum selection and integration clauses contained in the 2004 Agreements superseded the 2001 arbitration clause. However, we are not persuaded that the arbitrator's contrary conclusion involved a manifest disregard of the law. The arbitrator was aware of the law and did not disregard it.

Ahluwalia cited the law he was relying on in his arbitration brief. The arbitrator considered the brief and the parties' agreements and decided this issue against Ahluwalia. As the district court found, this does not constitute manifest disregard of the law.

▮ Indeed, there is case authority supporting the arbitrator's decision on this issue. *See Bank Julius Baer & Co. v. Waxfield Ltd.,* 424 F.3d 278, 282–84 (2d Cir.2005) (concluding that arbitration clause in agreements was not nullified by subsequent agreement containing both forum selection and merger clauses and noting that "if there is a reading of the various agreements that permits the [a]rbitration [c]lause to remain in effect, we must choose it"); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration).

In sum, we conclude that the district court properly declined to disturb the arbitrator's decision concerning the arbitrability of the dispute.

### II.

Ahluwalia next contends that the district court erred in declining to vacate the award because, by "denying the legal integrity of the ... judicial forum provisions" in the 2004 Agreements, the arbitrator and the district court violated the federal and state constitutional guarantees against impairment of contract obligations. Again, we perceive no error.

Initially, we note that Ahluwalia's argument in the district court was confined solely to the Colorado Constitution. Consequently, Ahluwalia failed to preserve, and we decline to address, the argument as it pertains to the

federal constitution. *See Fifth Third Bank v. Jones*, 168 P.3d 1, 5 (Colo.App.2007).

■ Colorado Constitution article II, section 11 provides, in pertinent part, that "[n]o ... law impairing the obligation of contracts ... shall be passed by the general assembly." The clause is designed to protect vested contract rights from legislative invasion. *See In re Estate of DeWitt*, 54 P.3d 849, 858 (Colo.2002).

■ Ahluwalia has cited no authority holding that the Contract Clause is violated by an arbitrator's award concerning a contract dispute, or by a judicial decision upholding such an award. Indeed, judicial decisions generally do not fall within the prohibitions contained in such clauses. *See Dowd & Dowd, Ltd. v. Gleason*, 181 Ill.2d 460, 230 Ill.Dec. 229, 693 N.E.2d 358, 369 (1998) (as a general principle, judicial decisions are not subject to state constitutional prohibition against impairment of contracts); *see also Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 429 n. 8, 54 S.Ct. 231, 78 L.Ed. 413 (1934) (judgment, although based on a contract, is not deemed to be within the meaning of the federal Contract Clause); *Frazier v. Lowndes County, Miss., Bd. of Educ.*, 710 F.2d 1097, 1099 (5th Cir.1983) (federal Contract Clause applies to impairments through the exercise of legislative, not judicial, authority).

We are not persuaded that the Contract Clause in our constitution was implicated, much less violated, by the decisions of the arbitrator and the district court in this proceeding.

### III.

Ahluwalia also contends that the arbitration clause in the 2001 Agreement was void because QFA was not properly registered to conduct business in California. He contends that the district court should have vacated the award on this basis. We are not persuaded.

■ The arbitrator specifically addressed and rejected this argument in the award itself. Because Ahluwalia's voidness argument actually applies to the entire 2001 Agreement, we conclude that the arbitrator properly addressed the argument in the first instance. *See Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir.2003) (where parties have formed an agreement containing an arbitration clause, any attempt to dissolve or have the entire agreement declared voidable or void is for the arbitrator to resolve—only if the arbitration clause is attacked on an independent basis can the court decide the dispute); *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex.2007) (because defense pertained to agreement in general, rather than the arbitration clause in particular, it must be arbitrated). Additionally, the parties specifically gave the arbitrator the authority to decide questions concerning the validity of the arbitration agreement.

Under these circumstances, we review the arbitrator's decision under a deferential standard. *See First Options*, 514 U.S. at 943, 115 S.Ct. 1920.

Here, Ahluwalia does not dispute that QFA "complied with all applicable regulations and registration requirements under California's franchising act." Nor does he dispute the arbitrator's specific finding that QFA had received approval and was authorized to enter into franchise agreements in California.

Ahluwalia nevertheless argues that QFA was also required to register to conduct business in California. However, he failed to provide any persuasive authority to the arbitrator demonstrating that, even if this separate registration requirement existed, the penalty for failure to comply was a voiding of the franchise agreements. Moreover, the arbitrator specifically noted that a California statute formerly imposing a voidness penalty had been amended to "eliminate[ ] the provision making such contracts void." *See* Cal. Corp.Code § 2203 (2008) (listing penalties for foreign corporation transacting unauthorized intrastate business in California).

Because Ahluwalia failed to demonstrate that the arbitrator's decision on this issue amounted to a manifest disregard of the law, the district court properly declined to disturb that decision. *See Hollern*, 458 F.3d at 1177.

## IV.

Ahluwalia next contends that the district court's order granting QFA's motion for post-award interest is erroneous because QFA's motion was untimely and because the amounts awarded were excessive. We disagree.

### A. Timeliness

Ahluwalia contends that the district court's December 11, 2007, order confirming the arbitration award was a final judgment and that QFA's February 19, 2008, motion seeking post-award interest was untimely under C.R.C.P. 59(a). We are not persuaded.

■■■ Initially, we note that Ahluwalia has provided no authority holding that C.R.C.P. 59(a) applies upon entry of an order confirming an arbitration award. Indeed, the provisions of C.R.C.P. 59(a) are triggered only upon "entry of judgment." Moreover, section 13–22–225(1), C.R.S.2008, part of the Colorado's version of the Uniform Arbitration Act, specifically distinguishes between an "order" and a "judgment" by providing that "[u]pon granting an order confirming ... an award, the court shall enter a judgment in conformity therewith."

Here, the district court did not enter a "judgment" as part of its December 11, 2007, order confirming the award. In fact, the district court did not enter an actual "judgment" on the arbitration award until after it granted QFA's motions for attorney fees and interest. It was only then that C.R.C.P. 59(a) was triggered.

Additionally, even if we were to assume that the December 11, 2007, order constituted a "judgment," Ahluwalia has not demonstrated that a C.R.C.P. 59 motion was the appropriate basis for seeking interest on the arbitrator's decision. We note that QFA's motion requesting interest did not seek to modify the district court's underlying substantive ruling confirming the arbitration award. Instead, the request was more akin to a request for costs and attorney fees under C.R.C.P. 121 section 1–22, which may be sought "within 15 days of the entry of order or judgment, or within such greater time as the court may allow." C.R.C.P. 121

§ 1–22(1) (costs); *accord* C.R.C.P. 121 § 1–22(2)(b) (attorney fees)

In sum, Ahluwalia has failed to demonstrate that QFA's motion seeking post-award interest was untimely or that the district court otherwise lacked authority to rule on the motion.

### B. Amount of Post–Award Interest

Nor are we persuaded that the amount of post-award interest was excessive.

■■■ Contrary to Ahluwalia's argument, the amount of interest awarded did not reflect any improper compounding. Rather, the district court applied a simple interest calculation of two percent per month as authorized in the franchise agreements.

■■■ Relying on *Life Care Centers of America, Inc. v. East Hampden Associates Limited Partnership,* 903 P.2d 1180, 1189 (Colo.App.1995), Ahluwalia also asserts the district court improperly awarded post-award interest concerning the portion of the arbitration award representing future damages.

Ahluwalia's reliance on *Life Care Centers* is misplaced. That case merely held that, in considering a request for prejudgment interest under section 5–12–102, C.R.S.2008, a court should award such interest only as to past damages incurred prior to entry of judgment, not future damages. In contrast to the prejudgment interest at issue in *Life Care Centers,* here, QFA sought post-award interest concerning an amount fixed at the time of the arbitration, which had been due and owing for several months prior to the district court's entry of judgment. Thus, the district court properly awarded interest on that amount.

## V.

We agree with Ahluwalia's contention that district court erred in authorizing post-judgment interest "compounded annually."

■■■ As the arbitrator noted in his award, the franchise agreements did not allow for compounding of interest on past due amounts. Accordingly, that portion of the district court's judgment cannot stand.

## VI.

 Finally, we agree with QFA's assertion that it is entitled, as the prevailing party in this appeal, to an award of reasonable appellate attorney fees and costs under a fee-shifting provision contained in the franchise agreements.

We exercise our discretion pursuant to C.A.R. 39.5 and remand the case to the district court to determine QFA's reasonable attorney fees and costs incurred on appeal. *See Ranta Constr., Inc. v. Anderson,* 190 P.3d 835, 847 (Colo.App.2008).

The portion of the judgment authorizing compounding of post-judgment interest is reversed, and the case is remanded with instructions that the judgment be amended to provide for recovery of simple post-judgment interest at the rate of two percent per month. On remand, the district court shall also determine and award reasonable attorney fees and costs incurred by QFA in this appeal. In all other respects, the district court's order and judgment are affirmed.

Judge CASEBOLT and Judge ROMÁN concur.