TAUBMAN CHERRY CREEK SHOP-PING CENTER, LLC, a Delaware limited liability company, Plaintiff–Appellee,

v.

NEIMAN–MARCUS GROUP, INC., a Delaware corporation, Defendant–Appellant.

No. 09CA2134.

Colorado Court of Appeals, Div. III.

Sept. 16, 2010.

Rehearing Denied Oct. 28, 2010.

* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. I, § 5(3), and

§ 24–51–1105, C.R.S.2010.

Brownstein Hyatt Farber Schreck, LLP, Lisa Hogan, Denver, Colorado, for Plaintiff–Appellee.

Sherman & Howard LLC, Kenneth B. Siegal, Kevin L. Opp, Reed W. Morgan, Denver, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

In 1989, defendant, The Neiman–Marcus Group, Inc. (Neiman), entered into a long-term lease on a parcel of the Cherry Creek Shopping Center (the Mall) with plaintiff, Taubman Cherry Creek Shopping Center, LLC (Taubman). In 2009, a dispute arose between the parties concerning apportionment of property taxes. Neiman sought arbitration, contending that the dispute fell under certain limited arbitration provisions of the lease. Taubman filed a motion in the district court for a stay of arbitration under sections 13–22–205, –206, and –207, C.R.S.

2010, which the court granted, concluding that the dispute was not subject to the arbitration provision. We vacate the order and remand.

## I. Background

The parties' lease is seventy pages long and is broken up into nineteen separate articles. Generally, it describes Taubman's intent to develop "an enclosed mall retail center" in which four parcels are leased to the anchor tenants, one of which is Neiman, and Taubman retains a parcel for the development of "an enclosed mall and a grouping of retail stores." Of the nineteen articles, the only one requiring arbitration as a dispute remedy is Article III, concerning "Real Estate Taxes." Article III is divided into three subsections, two of which, entitled "Tenant's Tax Obligation" and "Payment," are relevant here.

Those sections of Article III provide: (1) that Neiman must pay all real property taxes imposed against its parcel (the Demised Premises), or those attributable to its parcel if it is not assessed separately from the Mall as a whole; (2) that Neiman must pay its proportionate share of taxes imposed against, or attributable to, the common area of the Mall; (3) a formula for determining Neiman's proportionate share of the common area taxes; and (4) that the parties will submit to arbitration any disputes concerning the amount attributable either to the Demised Premises or the common area, if no separate assessments are conducted, and those concerning Neiman's share of the common area tax.

In the first of the relevant subsections, 3.01(A), the parties agree that "in the event a separate assessment is not available," if they are unable to agree as to the proper allocation of the tax imposed on the Demised Premises, they will submit the matter to arbitration "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" (AAA). The parties further agree to resolve through arbitration disputes arising under sections 3.01(B), regarding how much of the Mall's total tax burden is attributable to the common area of it, and 3.02(A), regarding Taubman's calcula-

tions of Neiman's proportionate share of taxes, "as set forth in" section 3.01(A).

Here, the underlying dispute concerns a tie-back credit (designed to avoid overvaluation of the common area as used in conjunction with all the parcels) that was assigned by the tax assessor only to Taubman's parcel. Neiman argues that Taubman should have reduced the common area impositions it charged to the other tenants, and contends that the dispute is subject to arbitration under section 3.01(B) of the lease, which provides that the parties will arbitrate tax disputes "in the event such [c]ommon [a]rea is not separately assessed." Taubman counters that because the common area was separately assessed by the State, section 3.01(B)'s arbitration provision does not apply.

The district court agreed with Taubman that the dispute was not arbitrable. Initially, the court determined that it had jurisdiction pursuant to section 13–22–206(2), C.R.S.2010, to determine whether the parties' dispute was subject to arbitration. The court then determined that the lease required arbitration "only in situations where the dispute ... stems from the methodology or calculation of [Neiman's] proportionate shares of taxes on the common areas of the property," which, in the court's view, did not include issues pertaining to entitlement to tie-back adjustments received by Taubman and allegedly not disclosed to the tenants.

On appeal, Neiman makes two arguments. First, it contends that, because the parties had agreed in the lease to arbitrate pursuant to the AAA's Commercial Rules, whether the current dispute was within the scope of the parties' arbitration agreement should have been decided by the arbiter, not the court. Second, it contends that even if it was proper for the district court to determine whether the dispute was arbitrable, it erred by concluding that it was not.

We disagree with the first contention, but agree with the latter.

## II. Standard of Review

We review de novo a trial court's decision on a motion to stay arbitration. *See Moffett v. Life Care Ctrs. of Am.,* 187 P.3d 1140, 1143 (Colo.App.2008) (standard of review on decision on a motion to compel arbitration is de novo); *Lane v. Urgitus,* 145 P.3d 672, 679 (Colo.2006) (a valid, enforceable arbitration provision divests trial courts of subject matter jurisdiction); *Lee v. Banner Health,* 214 P.3d 589, 594 (Colo.App.2009) (a trial court's determination regarding subject matter jurisdiction is a question of law subject to de novo review). We also review de novo whether the parties have agreed to arbitrate the question of arbitrability. *Contec Corp. v. Remote Solution Co.,* 398 F.3d 205, 208 (2d Cir.2005); *see also Ad Two, Inc. v. City & County of Denver,* 9 P.3d 373, 376 (Colo.2000) (contract interpretation is a question of law that is reviewed de novo); *Galbraith v. Clark,* 122 P.3d 1061, 1064 (Colo. App.2005) (arbitration is a matter of contract).

The interpretation of documentary evidence in the record is also a question of law subject to de novo review. *Bd. of County Comm'rs v. Berkeley Village,* 40 Colo.App. 431, 436, 580 P.2d 1251, 1255 (1978) (appellate court not bound by district court's findings and conclusions based on documentary evidence and the interpretation thereof). Accordingly, we also review de novo whether a dispute falls within the scope of an arbitration agreement. *Radil v. Nat'l Union Fire Ins. Co.,* 233 P.3d 688, 692 (Colo.2010).

## III. Arbitrability Determination is for the Court

The parties do not dispute that the arbitration agreement here is governed by the Colorado Uniform Arbitration Act, sections 13–22–201 to –230, C.R.S.2010 (CUAA).

Under the CUAA, the court, not the arbiter, decides whether a controversy is subject to an agreement to arbitrate. § 13–22–206(2). However, parties may waive or vary the effect of the CUAA "to the extent permitted by law." § 13–22–204, C.R.S.2010. Accordingly, the question of arbitrability is for a court to decide, unless the parties plainly and unambiguously agree otherwise. *See City & County of Denver v. Dist. Court,* 939 P.2d 1353, 1363 (Colo.1997) (where agreement is silent or ambiguous on the subject,

the court decides questions of whether a dispute is within the scope of the agreement to arbitrate); *BRM Constr., Inc. v. Marais Gaylord, LLC*, 181 P.3d 283, 285–86 (Colo. App.2007) (question of arbitrability is for arbiter where the parties' contract plainly gives the arbiter that authority); *cf. Ahluwalia v. QFA Royalties, LLC*, 226 P.3d 1093, 1098 (Colo.App.2009) (in a case governed by the Federal Arbitration Act, question of arbitrability is for judicial determination unless the parties clearly and unmistakably provide otherwise) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002)).

Neiman argues that, here, the arbitration provision in the lease plainly and unambiguously gave the arbiter the authority to decide questions of arbitrability. In support, Neiman points to the portion of section 3.01 which states that arbitration shall be "in accordance with the Commercial Arbitration Rules of the [AAA]." The AAA Commercial Rules, in turn, currently provide that the arbiter "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures* (2009), R–7(a).

■ Arbitration is a matter of contract, and, when determining whether parties agreed to submit a dispute to arbitration, including a dispute over an underlying substantive dispute's arbitrability, courts should follow state law principles governing the formation of contracts, subject to a presumption that courts should determine arbitrability unless the parties clearly provide otherwise. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *City & County of Denver*, 939 P.2d at 1361; *see* § 13–22–206(2). Certainly, parties may incorporate by reference AAA rules by expressly providing that those rules will govern any dispute within the scope of their arbitration agreement. *See Columbine Valley Constr. Co. v. Bd. of Directors, Roaring Fork School Dist. RE–1J*, 626 P.2d 686, 691–92 (Colo.1981). If parties to an arbitration agreement have explicitly

incorporated a rule that empowers the arbiter to determine arbitrability, numerous courts agree with Neiman's contention that such incorporation constitutes clear and unmistakable evidence of the parties' intent to delegate that issue to the arbiter. *See, e.g., Ahluwalia*, 226 P.3d at 1098 (collecting cases).

■ The answer here, however, is somewhat less obvious. Although Neiman does not point this out, when the lease, including the arbitration clause, was executed in 1989, the AAA Commercial Rules then in effect were silent as to who decides the arbiter's jurisdiction, including whether a dispute is within the scope of an agreement to arbitrate. American Arbitration Association, *Commercial Arbitration Rules* (1988). In fact, the AAA did not amend its Commercial Rules to expressly grant the arbiter power to rule on his or her own jurisdiction until 1999. American Arbitration Association, *AAA Revises Commercial Arbitration Rules*, 53 Dispute Resolution Journal 4, 96 (Nov. 1998) (revised rules will take effect on January 1).

The issue is further muddied because, unlike arbitration provisions in cases finding an express grant of power to decide arbitrability to an arbiter by incorporation of AAA rules, the arbitration provision in the lease here makes no mention of whether the AAA rules then in effect, or those in effect when a dispute arises or when arbitration is initiated, are to govern the arbitration. *See, e.g., Columbine Valley Constr.*, 626 P.2d at 691 (express agreement to arbitrate according to AAA Rules "then obtaining"); *Ahluwalia*, 226 P.3d at 1098 (express agreement to arbitrate according to "then current" AAA Rules). But, we note, the AAA rules then in effect did include a provision that "[t]hese Rules and any amendment thereof shall apply in the form obtaining at the time the arbitration is initiated." *See* American Arbitration Association, *Commercial Arbitration Rules* (1988), Rule 1.

Thus, for Neiman's argument to prevail, we would need to conclude not only that the parties' reference to the AAA's Commercial Rules incorporated the rules existing in 1989, the content of which the parties had the opportunity to apprise themselves prior to

agreeing to be bound by them, but also that, although they did not expressly so state, they incorporated by reference any amendments that the AAA might possibly adopt in the future merely by virtue of their reference to the rules.

■ As noted above, we look to general contract formation principles to interpret arbitration agreements. Pursuant to general contract law, for an incorporation by reference to be effective, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30.25, at 234 (4th ed.1999); *cf. In re Allen's Estate,* 28 Colo.App. 574, 577–78, 475 P.2d 629, 630–31 (1970) (discussing need for statute expressly allowing pour-over wills because theory of incorporation by reference does not permit subsequent amendment of the trust after execution of the will).

In *Ahluwalia* and *Columbine Valley Construction,* although the parties purported to incorporate AAA rules as they might be subsequently amended, the issue of whether they agreed to be bound by future amendments was not addressed by the respective courts. *Columbine Valley Constr.,* 626 P.2d at 691; *see Ahluwalia,* 226 P.3d at 1098 (concluding parties clearly and unmistakably agreed that arbiter would decide arbitrability by incorporating the AAA's Commercial Rules into their 2001 agreement). Indeed, we are aware of no precedent holding that parties can clearly know of and assent to contract terms that do not yet exist when, as here, the term is in abrogation of statutorily expressed public policy, the parties do not expressly agree to be bound by future amendments, neither party has any control over subsequent amendments, and there is no ascertainable standard for the promulgation of amendments or new rules. *Compare Lamb v. Emhart Corp.,* 47 F.3d 551, 559 (2d Cir.1995) (parties assented to a future amendment to a stock option plan between the same parties by incorporating the plan by reference, when plan then provided that one party could amend plan in the future, subject to permission of other party) *with Gilbert Street Developers, LLC v. La Quinta*

*Homes, LLC,* 174 Cal.App.4th 1185, 1194, 94 Cal.Rptr.3d 918, 924–25 (Cal.Ct.App.2009) (parties incorporating AAA Commercial Rules in 1998 did not incorporate future R–7(a) by reference; stating, "Incorporating the *possibility* of a *future* rule by reference simply doesn't even meet the basic requirements for a valid incorporation by reference under simple state contract law."; comparing the incorporation by reference of a nonexistent rule to buying a "pig in a poke").

We also note that, unlike general contractual agreements, an agreement to divest courts of jurisdiction to decide whether a dispute is within the scope of an arbitration agreement requires more than agreement, it requires *plain and unambiguous* (or, as federal courts phrase it, *clear and unmistakable* ) agreement. The rationale for this heightened standard is that "[a] party might often not focus upon [the question of who determines arbitrability] or upon the significance of having arbitrators decide their own powers." *First Options,* 514 U.S. at 945, 115 S.Ct. at 1925. Because "a party can be forced to arbitrate only those issues it specifically agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbiters that power, for doing so might often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.*

Thus, the law requires that parties must *plainly and unambiguously* empower an arbiter to decide arbitrability and that they must *clearly and knowingly* assent to terms incorporated by reference. Here, the parties merely incorporated by reference a set of rules that provided any incorporation of them would be construed as incorporating future amendments and that were subsequently amended by a nonparty to empower the arbiter to decide arbitrability. Accordingly, we conclude that, at the very least, whether the parties thereby agreed to have the arbiter decide questions of arbitrability is ambiguous and, therefore, the parties did not abrogate the general rule that courts make such determinations.

### IV. Dispute is within Scope of Arbitration Agreement

The question we must answer, then, is whether the current dispute, regarding the common area tie-back, is within the scope of the parties' agreement to arbitrate. Because arbitration is a favored means of dispute resolution, any doubts regarding the scope of an arbitration clause are resolved in favor of arbitration. *Sopko v. Clear Channel Satellite Servs., Inc.*, 151 P.3d 663, 667 (Colo. App.2006). Here, although we base our conclusion on a different provision of the lease than that relied on by Neiman, *see Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 550 (Colo.2006) (appellate courts are not limited to the construction of a contract relied on by the trial court or offered by the parties), we conclude that the tie-back dispute is squarely within the scope of the parties' arbitration clause.

As set forth above, the arbitration agreement is contained in Article III of the lease, which addresses real estate taxes as follows:

First, section 3.01 addresses Neiman's tax obligations. Specifically, section 3.01(A) provides that Neiman must pay all real estate taxes imposed against the Demised Premises. Section 3.01(A) further provides that if the Demised Premises are separately assessed, Neiman shall pay the taxes directly to the taxing authorities, but if the Demised Premises are not assessed separately from the Mall as a whole, Neiman shall pay Taubman the amount attributable to the Demised Premises. Finally, section 3.01(A) provides that if there is no separate assessment and the parties are unable to agree as to the amount attributable to the demised premises, they will submit the dispute to arbitration "in accordance with the Commercial Arbitration rules of the [AAA]."

In addition to the taxes assessed against or attributable to the Demised Premises, section 3.01(B) provides that Neiman must also pay its proportionate share of any taxes levied against the common area. Section 3.01(B) provides a formula for determining Neiman's proportionate share of the common area taxes, and provides that if the common area is not separately assessed, "the procedure set forth in Section 3.01 A [i.e., arbitration] . . . shall be applicable."

Next, section 3.02 addresses how Neiman shall pay its tax obligations. It provides, "If the Demised Premises are not separately assessed [discussed in section 3.01(A) ] and as to [Neiman's] share of the [c]ommon [a]rea [i]mpositions [discussed in 3.01(B) ], [Neiman] shall pay its share . . . to [Taubman] within ten (10) days after receiving a request therefore." It provides that if Neiman disputes Taubman's calculations, "the matter shall be submitted to arbitration . . . [as] set forth in Section 3.01." Land Lease § 3.02(A).

In the district court, Neiman argued that, by receiving a tie-back adjustment associated with the common area that had the effect of reducing the assessed value (and thus tax obligation) of its retained parcel, without reducing the common area impositions for other tenants, Taubman effectively negated the separate assessment of the common area. Thus, Neiman argued, the common area was not separately assessed and the arbitration provision of section 3.01(B) mandated that the current dispute be submitted to arbitration. Taubman responded, and the district court agreed, as do we, that section 3.01(B) does not apply because it is the tax assessor who assesses properties, and it is undisputed that the assessor assessed the common area separately from the other Mall parcels.

However, as noted above, the parties also agreed to arbitrate "[i]n the event [Neiman] disputes [Taubman's] calculations" as to Neiman's "share of the [c]ommon [a]rea [i]mpositions." Land Lease § 3.02(A). The dispute here is whether Taubman should have reduced (i.e., calculated differently) Neiman's share of the common area impositions to make up for the fact that the tie-back credit was assigned only to Taubman's parcel. As such, the dispute plainly falls within the scope of the agreement to arbitrate any disputes concerning Taubman's calculations of Neiman's share of the common area impositions. Thus, the district court erred in concluding that the dispute was not within the scope of that agreement and, thus, was not arbitrable.

Based on this disposition, we need not address the parties' remaining arguments, which concern the merits of the dispute.

The order granting the stay of arbitration is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.

Judge STERNBERG * and Judge NEY * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.