Opinion by JUDGE GRAHAM
¶ 1 As a matter of first impression in Colorado, we must determine whether participation in an arbitration waives a party's *661 objection to the existence of a contract that contains an arbitration clause. We conclude that it does. Defendants, Northwest Direct Marketing, Inc., Northwest Direct Marketing of Oregon, Inc., and Northwest Direct Teleservices, Inc., appeal the trial court's judgment in favor of plaintiff, Harper Hofer & Associates, LLC, affirming an arbitration award in favor of plaintiff and assessing additional collection costs and attorney fees. We conclude that under the Colorado Uniform Arbitration Act (CUAA), sections 13-22-201 to - 230, C.R.S. 2014, defendants waived their objection to the validity of the agreement containing the arbitration clause by actively participating in the arbitration proceeding and not timely seeking judicial review. Accordingly, we affirm and remand with directions.
I. Background
¶ 2 Defendants engaged plaintiff to provide expert reports and possible testimony in an unrelated legal matter. The parties exchanged various engagement letters which all contained the following arbitration clause:
Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by binding arbitration, in Denver, Colorado, in accordance with the Commercial Arbitration Rules of the American Arbitration Association in place at the time of the filing of any demand (Arbitration Proceeding). Any such demand will be sent to the address (mail or email) used for billing, and the demand will be deemed to be served upon attempted delivery to that address. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction hereof. It is agreed that, in the event of arbitration, the parties will keep the proceedings and results confidential, except as required by law or reasonable business necessity.
In the event that either party institutes legal proceedings (not including Arbitration Proceeding) with respect to this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief to which it is entitled, its costs and expenses incurred in connection with such legal proceedings, including reasonable attorney's fees.
While the arbitration clause was never objected to by either party, there were numerous revisions made between the parties regarding, among other things, the maximum cost of services and the retainer to be provided plaintiff. One engagement letter sent by plaintiff and dated August 3, 2011, was signed by defendants' representative on August 31, 2011.[1] This letter contains no clear alterations.
¶ 3 Another engagement letter sent by plaintiff and dated August 3, 2011, was signed by defendants' representative on September 29, 2011, and contained alterations to the August 3 letter. In an email dated October 4, 2011, plaintiff objected to defendants' revisions to the engagement letter. The record contains no further communications between the parties regarding the completion of the engagement.
¶ 4 In 2012, plaintiff initiated arbitration proceedings against defendants for the fees and costs associated with the work it performed in 2011. Defendants, via e-mail to the arbitrator, requested that a court determine whether the parties ever executed a valid contract (and, thereby, agreed to arbitration).[2] However, defendants also requested the arbitrator make a determination that no contract between the parties existed and, after receiving an unfavorable ruling on that *662 issue, participated in the arbitration proceedings. Defendants never sought independent judicial relief pursuant to C.R.C.P. 57 on the question of whether the parties had a valid agreement to arbitrate. Ultimately, the arbitrator found in favor of plaintiff and against defendants, and ordered defendants to pay plaintiff $27,982.24.
¶ 5 On April 5, 2013, plaintiff filed a petition to convert the arbitration award to a civil judgment in Denver County District Court. In its petition, plaintiff sought the original $27,982.24 award plus costs of collection, fees, and interest for a total of $42,830.03. Defendants responded and requested that the district court vacate the arbitration award.
¶ 6 In seeking to vacate the arbitration award, defendants raised three arguments: (1) only the district court could determine the existence of a contract between the parties and, therefore, the arbitrator's determination that the parties executed a valid contract containing an arbitration clause was in error; (2) the arbitrator exceeded his powers by awarding plaintiff's attorney fees when the arbitration provision expressly excluded such fees; and (3) the arbitrator refused to consider evidence and counterclaims material to the controversy when he denied defendants the opportunity to examine two witnesses and struck their counterclaims as untimely.
¶ 7 The district court granted plaintiff's motion to convert the arbitration award and denied defendants' motion to vacate. The court concluded that the doctrine of separateness prevented it from delving into the existence of a contract because a court is limited to determining whether an arbitration provision itself is enforceable, and questions of the enforceability of an entire contract are left to arbitrators. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The district court ruled: "In short, in determining whether the parties have agreed to arbitrate, the Court is limited to an examination of the arbitration provision within the agreement. Considerations regarding the agreement (or lack thereof) as a whole are impermissible...." The district court reasoned that "the arbitration provision is enforceable" because neither party objected to it. The court also denied defendants' remaining claims as outside the review provisions of the CUAA. See § 13-22-223(1), C.R.S. 2014 (listing the reasons a district court shall vacate an arbitration award).
¶ 8 The district court held a hearing on the collection costs and fees requested by plaintiff and ultimately affirmed the award for a total of $39,010.37.
II. Colorado Uniform Arbitration Act
¶ 9 On appeal, defendants raise a single contention: "Did the trial court err when it converted an arbitration award to a civil judgment over [defendants'] objections at both the arbitration and district court stages, when [defendants] never accepted an offer to arbitrate disputes?" In response, plaintiff argues that defendants waived their objection to the arbitrator's authority to determine the existence of a valid contract when they consented to the arbitrator making a determination as to arbitrability. For the reasons explained below, we agree in principle with plaintiff.
A. Standard of Review
¶ 10 "Whether an agreement to arbitrate exists is a matter of law that we review de novo." Lane v. Urgitus, 145 P.3d 672, 677 (Colo. 2006). We review de novo whether the parties have agreed to arbitrate the question of arbitrability. Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., 251 P.3d 1091, 1093 (Colo. App. 2010). We also review de novo the district court's legal conclusions. Treadwell v. Vill. Homes of Colo., Inc., 222 P.3d 398, 400 (Colo. App. 2009).
B. Waiver
¶ 11 "Colorado law favors the resolution of disputes through arbitration." J.A. Walker Co., Inc. v. Cambria Corp., 159 P.3d 126, 128 (Colo. 2007). To that end, the General Assembly enacted the CUAA. Id.[3] "As *663 pertinent here, the CUAA requires the court to determine 'whether an agreement to arbitrate exists.' " Estate of Grimm v. Evans, 251 P.3d 574, 576 (Colo. App. 2010) (quoting § 1322-206(2), C.R.S. 2014). "But it assigns to the arbitrator such issues as 'whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.' " Id. (quoting § 13-22-206(3)). Therefore, "[u]nder the CUAA, the court, not the arbiter, decides whether a controversy is subject to an agreement to arbitrate." Taubman Cherry Creek, 251 P.3d at 1093. "However, parties may waive or vary the effect of the CUAA 'to the extent permitted by law.' " Id. (quoting § 13-22-204, C.R.S. 2014 ). "[A]n agreement to divest courts of jurisdiction to decide whether a dispute is within the scope of an arbitration agreement requires more than agreement, it requires plain and unambiguous (or, as federal courts phrase it, clear and unmistakable ) agreement." Id. at 1095.
¶ 12 "Waiver is the intentional relinquishment of a known right or privilege." Dep't of Health v. Donahue, 690 P.2d 243, 247 (Colo. 1984). "A waiver may be explicit, as when a party orally or in writing abandons an existing right or privilege; or it may be implied, as, for example, when a party engages in conduct which manifests an intent to relinquish the right or privilege, or acts inconsistently with its assertion." Id.
¶ 13 The CUAA allows a party to contest an arbitration award if "[t]here was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under section 13-22-215(3) not later than the beginning of the arbitration hearing." § 13-22-223(1)(e) (emphasis added); see § 1322-215(3), C.R.S. 2014 ("Unless a party to the arbitration proceeding makes an objection to lack or insufficiency of notice not later than the beginning of the hearing, the party's appearance at the hearing shall waive the objection.").
¶ 14 Next, section 13-22-204(1) states "[e]xcept as otherwise provided in subsections (2) and (3) of this section, a party to an agreement to arbitrate or to an arbitration proceeding may waive, or, the parties may vary the effect of, the requirements of this part 2 to the extent permitted by law." And while section 13-22-204(3)(a) under typical circumstances does not allow a party to waive the requirements of section 13-22-223, section 13-22-204(3)(b) does allow "any commercial entity" to "waive the requirements of section 13-22-223 except if the award was procured by corruption or fraud."
¶ 15 Under the doctrine of separateness it is recognized that a party may challenge the contract containing an arbitration clause and the arbitration clause itself. See Ingold v. AIMCO/Bluffs, L.L.C. Apartments, 159 P.3d 116, 120-21 (Colo. 2007). But all challenges to the underlying contract-including challenges that the contract is void-are within the province of the arbitrator. Id. at 121. In contrast, challenges to the validity of the arbitration clause are within the province of the court. Id. The trial court is "to consider challenges to the existence of an agreement to arbitrate, as opposed to challenges to the existence of the contract as a whole." Id. And the term 'contract' includes putative contracts. Id.
¶ 16 Defendants reason that contesting the very existence of the contract is something that the trial court may consider, apart from any considerations of the validity of the contract as a whole and the whether the arbitration clause is enforceable. We acknowledge the possibility that a party might seek a declaratory judgment as to the existence of a contract. However, as in the case here, we conclude that defendants willingly arbitrated that question and in doing so, waived any ability to seek such relief. When a party does not seek judicial resolution of the question of whether a contract exists before participating in an arbitration regarding the existence of the contract and the contract's arbitration clause, he waives any arguments about the existence of the underlying contract on appeal.
¶ 17 Here defendants elected to proceed to arbitration. In an e-mail exchange with the arbitrator in this matter, defendants requested *664 the arbitrator determine the question of a contract (and, therefore, the existence of the contract as a whole):
AAA may only open a case for arbitration when a written and executed contract has been submitted. [Plaintiff] misrepresented an earlier version of the contract with a counteroffer, one [it] rejected, as the contract. The fact that it contains an arbitration agreement, the language of which neither party has taken issue with is inconsequential. What matters is do we have a contract and we do not. For efficiency purposes we have asked AAA to make that decision and for you to acknowledge that there was no executed contract. There must be both offer and acceptance and the contract fails overall in this regard. If it fails overall, an arbitration component cannot be imposed.
(Emphasis added.) The e-mail further states that "[h]aving raised our objection for the purposes of appeal, we will proceed with the arbitration, defend the parties that have been inappropriately converted and insofar as you have concluded that there is a contract, will respond with our affirmative defenses and counterclaims ." (Emphasis added.) This e-mail and then defendants' full participation in the arbitration is "conduct which manifests an intent to relinquish" the right to have a court determine the arbitrability of the dispute and is an "act[ ] inconsistent[ ] with its assertion" that only the court could determine arbitrability. Donahue, 690 P.2d at 247.
¶ 18 We find further support for our conclusion that defendants' conduct constituted a waiver in these circumstances in the remedies available in the CUAA. The CUAA provided defendants with a speedy disposition by a court of the validity of the arbitration clause. § 13-22-207(2), C.R.S. 2014. That provision states in pertinent part that "[o]n the motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is not an agreement to arbitrate, the court shall proceed summarily to decide the issue." Id. ; see J.A. Walker Co., 159 P.3d at 130 (discussing the "summary proceeding" under the CUAA). Assuming, without deciding, that the defendants could have raised the issue of the existence of a contract (thereby obviating the enforceability of an arbitration clause), defendants did not avail themselves of that opportunity. Defendants instead chose to participate in arbitration, likely to see if they received a favorable outcome. This "second bite at the apple" approach to arbitration would do injury to the purpose of alternative dispute resolution, particularly the speedy and less expensive resolution of disputes. See Treadwell, 222 P.3d at 401.
¶ 19 Several states have come to the same conclusion on waiver under their own statutory arbitration schemes. For example, in New York, "once a party participates in an arbitration proceeding, without availing itself of all its reasonable judicial remedies, it should not be allowed thereafter to upset the remedy emanating from that alternative dispute resolution forum." Commerce & Indus. Ins. Co. v. Nester, 90 N.Y.2d 255, 660 N.Y.S.2d 366, 682 N.E.2d 967, 969-70 (1997) ; see Rochester City Sch. Dist. v. Rochester Teachers Ass'n, 41 N.Y.2d 578, 394 N.Y.S.2d 179, 362 N.E.2d 977, 981 (1977) ("A party who has participated in arbitration cannot later seek to vacate the award on the ground that the controversy was not arbitrable."); Nat'l Cash Register Co. v. Wilson, 8 N.Y.2d 377, 208 N.Y.S.2d 951, 171 N.E.2d 302, 305 (1960) ("[B]y proceeding to arbitration without moving for a stay, [the party] must be deemed to have waived its contention that the agreement did not provide for arbitration.").
¶ 20 In New Jersey,
[t]he principle of waiver is invoked to assure that a party may not get two bites of the apple: if he chooses to submit to the authority and jurisdiction of an arbitrator, he may not disavow that forum upon the return of an unfavorable award. That important policy would be subverted if a party could enter a nominal objection to the arbitrator's jurisdiction, submit himself fully to the arbitration and still retain the option to demand a new hearing if he does not like the outcome of the arbitration.
Highgate Dev. Corp. v. Kirsh , 224 N.J.Super. 328, 540 A.2d 861, 863 (App.Div.1988) ; accord *665 Wein v. Morris , 194 N.J. 364, 944 A.2d 642, 652 (2008) ; see also Bayscene Resident Negotiators v. Bayscene Mobilehome Park , 15 Cal.App.4th 119, 18 Cal.Rptr.2d 626, 632 (1993) ("[A] party who questions the validity of the arbitration agreement may not proceed with arbitration and preserve the issue for later consideration by the court after being unsuccessful in the arbitration."); Bazzle v. Green Tree Fin. Corp. , 351 S.C. 244, 569 S.E.2d 349, 355 (2002) ("[A] party that by its conduct consents to arbitration of a dispute waives any subsequent judicial challenge to its arbitrability."), vacated on other grounds by Green Tree Fin. Corp. v. Bazzle , 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003).
¶ 21 Our conclusion comports with Colorado law prior to the enactment of the CUAA. See Glass-Pendery Consol. Mining Co. v. Meyer Mining Co., 7 Colo. 51, 54, 1 P. 443, 445 (1883) ("The well-settled rule of law relating to all irregularities in the proceedings of arbitrators which are not jurisdictional is that an objection, to be availing, must be seasonably made; that if a party, knowing of an irregularity in the proceedings, in order to avail himself of all chances of an award in his favor, remains silent, and permits the investigation to proceed, and money to be expended, and the time of all concerned to be consumed for the purpose, he will not afterwards be heard to question the validity of an award that is unfavorable to him. His silence will be construed into consent that the procedings [sic] continue without objection notwithstanding the error; for, had [an] objection been interposed before the award was made, the irregularity might have been corrected.").
¶ 22 We acknowledge that there are jurisdictions which hold that a party's participation in arbitration proceedings will not result in waiver of its right to raise the issue of arbitrability if it has made a timely objection to arbitrability before a hearing on the merits. See Eleanor L. Grossman, Annotation, Participation in Arbitration Proceedings as Waiver of Objections to Arbitrability Under State Law , 56 A.L.R.5th 757, § 4 (1998) (collecting cases); see, e.g. , Olsen v. United States , 546 F.Supp.2d 1122, 1129 (E.D. Wash. 2008) ("[W]hen a party 'forcefully objected to arbitrability at the outset of the dispute, never withdrew that objection, and did not proceed to arbitration on the merits of the contract claim,' waiver does not occur." (quoting Nagrampa v. MailCoups, Inc. , 469 F.3d 1257, 1280 (9th Cir. 2006) )); Mass. Highway Dep't v. Perini Corp. , 83 Mass.App.Ct. 96, 981 N.E.2d 721 (2013) (party did not waive its objection to arbitrability by participating in arbitration by consistently raising objection to the binding nature of arbitration); SCA Servs., Inc. v. Gen. Mill Supply Co. , 129 Mich.App. 224, 341 N.W.2d 480, 482 (1983) (same).
¶ 23 However, a major distinction between many of those cases and the situation at hand is that the party objecting to arbitration sought court review of the arbitrability question prior to proceeding to arbitration. See, e.g., Ruffin Woody & Assocs., Inc. v. Person Cnty., 92 N.C.App. 129, 374 S.E.2d 165, 167 (1988) (objection to arbitrability of dispute was preserved in part because "plaintiff followed the correct procedure by applying for a court order to stay the arbitration proceeding[s]"); SCA Servs., Inc., 341 N.W.2d at 481 (appellant "vigorously disputed the authority of the arbitrator to determine the waiver question, both in the courts and during the arbitration proceedings"); but see Grant v. Rotolante, 147 So. 3d 128, 132 (Fla.Dist.Ct.App.2014) (although party "had other options to challenge the panel's authority," his objection to the arbitration panel prior to participation in the arbitration was enough to preserve his objection to the panel's jurisdiction); Aetna Bridge Co. v. Dep't of Transp., 795 A.2d 517, 522 (R.I. 2002) (" 'It is well settled in this jurisdiction that if a party objects to substantive arbitrability at the arbitration hearing and then proceeds to arbitration, the party has preserved the [substantive arbitrability] issue for later determination by a reviewing court.' " (quoting State v. Local No. 2883, Am. Fed. of State, Cnty., & Mun. Emps., 463 A.2d 186, 189 (R.I. 1983) )).
¶ 24 Defendants argue that they preserved their objection at every level-arguing first to the arbitration association, then the specific arbitrator, and lastly, to the district court-and, therefore, they cannot have waived their argument that no agreement to *666 arbitrate exists. To credit this argument would be to give defendants, who fully participated in the arbitration proceeding and who had a simple procedure outlined by statute providing them with a remedy in the district court before expending any resources in the arbitration, a second bite at the apple. We believe the New York Court of Appeals best describes why allowing defendants to raise the question of arbitrability now would violate the heart of the CUAA.
[W]hat [appellant] did in this case was make a strategic and knowing decision to proceed with its case in the arbitral forum, while holding an inchoate trump card. Had it prevailed there, [appellant] would undoubtedly have withdrawn its appeal and sought to confirm such an arbitral victory. Its calculated risk having backfired, it now seeks to play the trump card and cancel the outcome of the very arbitration in which it voluntarily and fully participated. To encourage such unilateral advantage and forum-hedging would undermine arbitration principles and policies.
Commerce & Indus. Ins. Co. , 660 N.Y.S.2d 366, 682 N.E.2d at 971.
¶ 25 We are not persuaded otherwise by the division's reasoning in Ahluwalia v. QFA Royalties, LLC, 226 P.3d 1093, 1098 (Colo. App. 2009), which we decline to follow. See, e.g., People v. Thomas, 195 P.3d 1162, 1164 (Colo. App. 2008) (one division of this court is not bound by the decision of another division). First, that division was interpreting sections of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 - 16 (2012), not the CUAA. Second, the division followed Seventh and Eighth Circuit law for its position that if a party "clearly and explicitly reserves the right to object to arbitrability, participation in the arbitration does not preclude the party from subsequently challenging the arbitrator's authority in court." Ahluwalia, 226 P.3d at 1098. However, we are persuaded by the reasoning of those courts that determine participation can waive later arguments on arbitrability.
III. Valid Arbitration Clause
¶ 26 Our conclusion is further buttressed by the trial court's correct decision that the arbitration clause itself was enforceable. In our review of the clause we see that it covers "any controversy or claim" arising from the agreement and that it should be settled in accordance with the rules of the American Arbitration Association. See American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures (2013), R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."). Further, the record indicates that a proper notice was served in accordance with the clause's demand provisions and that defendants proceeded to arbitration in accordance with the notice.
IV. Attorney Fees on Appeal
¶ 27 We grant plaintiff's request for attorney fees and costs on appeal pursuant to: (1) section 13-22-225(2), C.R.S. 2014 ("A court may award the reasonable costs of the motion and subsequent judicial proceedings."); (2) the arbitration award ("If [defendants] fail to pay this award, [plaintiff] shall also be entitled to recover from [defendants] any further reasonable costs that [plaintiff] incurs in collection...."); and (3) the arbitration clause in the agreement ("In the event that either party institutes legal proceedings ... the prevailing party shall be entitled to recover ... its costs and expenses incurred in connection with such legal proceedings, including reasonable attorney fees."). See C.A.R. 39 (costs on appeal); C.A.R. 39.5 (attorney fees on appeal). Because the district court is in the best position to determine the amount of reasonable attorney fees, we remand to the district court to determine the appropriate amount of fees and costs.
V. Conclusion
¶ 28 We conclude that under the CUAA, a commercial entity that objects to the arbitrability of a dispute, but does not seek reasonable judicial remedies and instead participates in the arbitration, waives its argument on appeal that the dispute was not arbitrable.
*667 ¶ 29 The judgment is affirmed and the case is remanded to the district court for determination of reasonable attorney fees.
JUDGE LICHTENSTEIN and JUDGE BOORAS concur.

On appeal defendants argue that its representative "maintains he did not sign the engagement letter." However, our review of the record does not disclose where defendants' raised this issue with the arbitrator or the district court. Failure to raise an affirmative defense such as fraud waives that defense. See C.R.C.P. 8(c) ("In pleading to a preceding pleading, a party shall set forth affirmatively ... fraud ... and any other matter constituting an avoidance or affirmative defense."); Duke v. Pickett, 168 Colo. 215, 281, 451 P.2d 288, 291 (1969) (holding that affirmative defense of fraud was waived because it was not timely asserted); see Town of Carbondale v. GSS Props., LLC, 169 P.3d 675, 682 (Colo. 2007).

During the arbitration proceeding, defendants were represented by their CEO, rather than counsel. Defendants then engaged counsel for the current proceedings.

The parties appear to agree that this case is governed by the Colorado Uniform Arbitration Act, sections 13-22-201 to -230, C.R.S. 2014, rather than the Federal Arbitration Act, 9 U.S.C. §§ 116 (2012), although we have some questions as to whether the parties engaged in interstate commerce which would make the federal act applicable.